PINGREE *v.* PINGREE.

1. DIVORCE—ALIMONY—ESTATES OF DECEDENTS—EQUITY.

Equity has jurisdiction to modify a decree of divorce awarding alimony in installments after the death of the defendant husband, so as to grant a gross sum out of the estate of the deceased in lieu thereof. 3 Comp. Laws, §§ 8638–8641.

2. SAME.

*Held,* that the amount awarded was not excessive.

Appeal from Wayne; Murfin, J. Submitted December 12, 1911. (Docket No. 111.) Decided May 3, 1912.

Petition by Alice Davis Pingree in a divorce proceeding wherein petitioner was complainant against Hazen S. Pingree, Jr., for the modification of the final decree in said cause awarding complainant alimony. From a decree for petitioner, defendant appeals. Affirmed.

*Orla B. Taylor* and *Charles F. Delbridge,* for appellant.

*Geer, Williams, Martin & Butler,* for appellee.

MOORE, C. J. The following statement is taken from the written opinion of the trial court:

"On August 4, 1906, Alice Davis Pingree filed a bill for a divorce against Hazen S. Pingree, Jr., alleging extreme cruelty. On October 10, 1906, before the Honorable Flavius L. Brooke, at that time circuit judge, a decree was entered granting her a divorce and the custody of the minor child, Gilbert Bissell Pingree. The decree contained the following language:

"'The court, upon due consideration of the testimony introduced in open court upon the hearing and reference to making an allowance to complainant for alimony, expenses, etc., doth order, adjudge, and decree as follows: That the complainant be, and is hereby, awarded all the household furniture now in her possession.

The defendant is required to pay to the complainant as permanent alimony the sum of $3,000 annually, said sum to be payable in 12 equal installments of $250 each, which payments shall be made on the 1st day of each and every month in advance and shall be an allowance for the maintenance of complainant and her child, Gilbert Bissell Pingree, and in lieu of an allowance for any bills incurred by said complainant in connection with these proceedings for divorce instituted by her, and the complainant will pay such expenses except as therein later provided.'

"In the same decree, 3,500 shares of stock in the Pingree Company belonging to Hazen S. Pingree, Jr., were trusted in the hands of Frances G. Pingree and Hazel Hope Pingree, mother and sister, respectively, of the defendant, to secure the faithful performance of the terms of the decree. It will be noted that this decree does not provide how long this payment is to continue, whether during the joint lives of the parties, or whether until the minor child reaches the age of 14 or 21 years. In other words, no time is fixed when this payment shall cease. It seemed to be agreed between the counsel on the hearing giving rise to the present opinion that, so far as this allowance is concerned, the decree was a constant decree, and there is no proof now before the court indicating what proofs were before Judge Brooke upon which this portion of the decree was based. On the 7th day of May, 1910, Hazen S. Pingree, Jr., the defendant, departed this life at his home in the city of Detroit. Since that date no money has been paid under the terms of the decree. The great bulk of his estate consists of 7,600 shares of stock in the Pingree Company, which has always been a dividend-paying stock, although the dividends have varied at different times. On the 7th day of September, 1906, Hazen S. Pingree, Jr., made a will, by the terms of which this stock was given to his sister, Hazel Hope Pingree, to hold until his son, Gilbert Bissell Pingree, should attain the age of 30 years, the income of which was to go to said son, provided that if the son died before reaching the age of 30, the stock was to go absolutely to Hazel Hope Pingree, unless before the death of Gilbert Bissell Pingree he should marry, in which event the stock was to go to his widow or to any children that he might have had. The petitioner in this proceeding, after reviving the case in the name of the executrix (Hazen S. Pingree, Jr.'s, will in the meantime having been admitted to probate), and after making the guardian of the minor child, Gilbert

Bissell Pingree, a party to the proceeding, asks that under the statute authorizing the modification of a divorce decree, that this decree be modified so that she may be awarded a sum in gross not alone for the support and maintenance of herself and her minor child, but to the end that she may thus be given a portion of the property of Hazen S. Pingree, Jr. Her petition recites, and the proofs indicate, an increased cost of living since the date of the decree; her own impaired health, which she attributes largely to her mental distress over her matrimonial difficulties, and her own inability with her limited means to keep herself and child in the station in life to which they are accustomed and entitled."

After a hearing, the original decree was modified so that Mrs. Pingree should take as a gross allowance the sum of 2,000 shares of stock of the Pingree Company, being a portion of the 3,500 shares of stock held in trust by Hazel Pingree Depew under the agreement of August 4, A. D. 1906, and that such allowance is to be made in lieu of the allowance of $250 per month granted the petitioner under the original decree. The court further determined that petitioner should have received the sum of $250 per month from the first day of June, A. D. 1910, to and including the 1st day of July, A. D. 1911; or, in other words, the sum of $3,250. From this decree Mrs. Depew has appealed.

Her contention may be summarized by brief extracts from the brief of her solicitors. We quote:

"The important and controlling question in this case is: Has a circuit court, in chancery, jurisdiction to modify a decree of divorce awarding alimony, payable in installments, and fixing no time for the continuance of the payment, after and on account of the death of the husband, so as to grant a gross sum out of the deceased husband's estate, and is this right paramount to the right of the probate court to administer the estate in accordance with the last will and testament of the deceased husband? * * *

"It seems to us that the statutory provisions of this State are simply declaratory of the common law, or rather the ecclesiastical law, upon the subject, with the excep-

tion of certain modifications, to which we shall refer later, that the purpose of the adoption of the statutory provisions was to vest our courts of chancery with these powers, in view of the fact that we do not have ecclesiastical courts, and that we shall receive great assistance in determining the meaning of the statutory language by a study of the entire subject and the decisions of other courts as to the meaning of the language used.  *  *  *  We reach the conclusion from these decisions, therefore, that the right of modification of the decree ceases at the death of the husband, but that thereafter the divorced wife can recover from the estate any sum in gross or any overdue payments upon an annuity which accrued prior to the death.  We find no cases, however, and believe there are none, which will support the contention that, after the death of the husband and after the estate has gone into the hands of the probate court for administration, the divorced wife can still go into the court of chancery and obtain a modification of the decree as to her future support, or that the court of chancery can carve out a part of the estate for her benefit, or that the probate court can be bound by any such action."

The case was ably argued orally, and it is well briefed.

Unless the authority to modify this decree is to be found in the statutes of this State, it does not exist, and the court below was wrong.

At the outset we quote from the opinion of the late Justice HOOKER, in *Brown* v. *Brown*, 135 Mich. 141 (97 N. W. 396), for two reasons—*First*, to get the statutes applicable to the case before us, and, *second*, because of his statement as to what constitutes alimony:

" The common law definition given by law writers of the term ' alimony ' is perhaps not broad enough to include suit money or provision for infant children of the parties to a divorce.  See 1 Bish. Mar., Div. & Sep. §§ 1385, 1386; 2 Bish. Mar., Div. & Sep. § 829 *et seq.;* 2 Am. & Eng. Enc. Law (2d Ed.), 92 *et seq.; Taylor* v. *Taylor*, 93 N. C. 418 (53 Am. Rep. 460).  These authors state, however, that some of the statutes and decisions give a broader meaning to the term.  2 Bish. Mar., Div. & Sep. §§ 829, 835, 907, 1020, 1213; 2 Am. & Eng. Enc. Law (2d Ed.), 92; 9 Am. & Eng. Enc. Law (2d Ed.), 862,

863; *Whieldon* v. *Whieldon*, 2 Swab. & T. 388; *Richmond* v. *Richmond*, 2 N. J. Eq. 90.   Our statutes bearing upon this subject are as follows:

" ' (8638) SEC. 23. Upon every divorce from the bond of matrimony for any cause except that of adultery committed by the wife, and also upon every divorce from bed and board for any cause, if the estate and effects awarded to the wife shall be insufficient for the suitable support and maintenance of herself and such children of the marriage as shall be committed to her care and custody, the court may further decree to her such part of the personal estate of the husband, and such alimony out of his estate, real and personal, to be paid to her in gross or otherwise, as it shall deem just and reasonable, having regard to the ability of the husband, and the character and situation of the parties, and all the other circumstances of the case.'

" ' (8640) SEC. 27. In all cases where alimony or allowance for the support and education of minor children shall be decreed to the wife, the amount thereof shall constitute a lien upon such of the real and personal estate of the husband as the court by its decree shall direct, and, in default of payment of the amount so decreed, the court may decree the sale of the property against which such lien is decreed, in the same manner and upon like notice as in suits for the foreclosure of mortgage liens; or the court may award execution for the collection of the same; or the court may sequester the real and personal estate of the husband, and may appoint a receiver thereof, and cause such personal estate and the rents and profits of such real estate to be applied to the payment thereof; or the court, in lieu of a money allowance, may decree such a division between the husband and wife of the real and personal estate of the husband, or of the husband and wife by joint ownership or right, as he shall deem to be equitable and just.

" ' (8641) SEC. 28. After a decree for alimony or other allowance for the wife and children, or either of them, and also after a decree for the appointment of trustees to receive and hold any property for the use of the wife or children, as before provided, the court may, from time to time, on the petition of either of the parties, revise and alter such decree respecting the amount of such alimony or allowance, and the payment thereof, and also respecting the appropriation and payment of the principal and income of the property so held in trust, and may make any decree respecting any of the said matters which such court might have made in the original suit.'

" An examination of those statutes leads us to believe that the legislature intended to provide relief of two kinds,

viz.: (*a*) An allowance of specific property; (*b*) a sum to be paid to the wife by the husband for the support of the wife and such children as should be placed in her custody; and that this latter sum, which the statute contemplates is to be paid to her from his estate for her own or the children's support, or both, is called 'alimony' in the statute. Several of our decisions seem to have so treated it."

In *Seibly* v. *Ingham Circuit Judge*, 105 Mich. 584 (63 N. W. 528), a decree of divorce was rendered, but the question of alimony was reserved. More than five years later, and after the death of the husband, it was sought to have permanent alimony decreed. It was claimed there, as here, that after the death of the husband the court had no jurisdiction to deal with the question of alimony. Justice MONTGOMERY, speaking for the court, said:

"It is undoubtedly a general rule that the death of either party to a divorce suit *pendente lite* abates the suit, and it is also the general rule that a proceeding to enforce alimony at the common law abates on the death of either party. The reason of the rule is, in the first instance, that the purpose for which the proceeding is pending, namely, the dissolution of marriage, is accomplished, and in the second instance that, common-law alimony consisting as it does of provision for the support of the wife, on a divorce *a mensa et thoro*, by means of an allowance to be paid by the husband, the proceeding relates to conditions which exist only during the life of the two. But under our statute (How. Stat. §§ 6245, 6247) the court may decree suitable alimony, and it may award a sum in gross, which becomes presently payable, or the court may sequester the real and personal estate, and appoint a receiver thereof, and cause the personal estate and the rents and profits of the real estate to be applied to the payment of the alimony. It is proper practice for the court to determine in the first instance the right to decree, and to reserve the question of alimony for subsequent adjudication. See *Rea* v. *Rea*, 53 Mich. 40 [18 N. W. 551]. That was attempted to be done in this case, and, if it results that the death of the husband ousts the court of jurisdiction to award permanent alimony, it follows

that in every case where a decree is entered in the form here employed there must be a period of greater or less duration during which the wife is at the risk of losing the interest in her husband's estate, which she would have under the statute of distributions but for the divorce, and without opportunity afforded her by the court to have awarded her a proper allowance of alimony. This result would be manifestly unjust."

As the heirs at law and legatees under the will had not been made parties, the case was remanded to the lower court to allow them to be brought in. After a hearing in the lower court, the trial judge said he was of the opinion that the decree of divorce was obtained by deception, and he declined to give any alimony. The case was decided here nearly three years after the death of the defendant. Justice HOOKER, speaking for the court, said:

"The question of alimony being here for review, we may consider the whole record, which satisfies us that the defendant was not free from fault in the transaction; and while the cross-examination of the complainant shows that she refused to live with him at the time of the separation, and that he thereupon went away, and they never lived together afterwards, and perhaps justifies the legal conclusion that there was not a technical desertion by the defendant, it also leads us to believe that he never provided well for his wife, but left her largely upon her own resources. The original testimony shows that she supported herself nearly all of the time, and that she had no assistance from him after the separation. We are not satisfied that her refusal to cohabit with him was entirely without cause, or justified his abandonment of or failure to provide for her. He had ample means, yet he failed to do so, and persisted in that course against the express order for temporary alimony, which he did not pay. It may be that these facts influenced Judge Peck in determining that she was entitled to a divorce, and substantial justice may have been done in granting the decree to which the defendant practically confessed that she was entitled by declining to answer, and acquiescing in the result. If she is to be believed, she worked hard for years, and supported herself, thus indirectly contributing to his income, of which he had laid up several thousand dollars at the time of the divorce. Upon the whole, we think that she should

have alimony.   An order will be entered fixing the amount at $2,000, the same being in full of all claims for temporary alimony and costs, and in lieu of any claim for dower; and the case will be remanded for further proceedings." *Adams* v. *Seibly,* 115 Mich. 402 (73 N. W. 377).

In *Creyts* v. *Creyts,* 143 Mich. 375 (106 N. W. 1111, 114 Am. St. Rep. 656), an allowance of $3,500 alimony in lieu of dower had been decreed and paid.   The defendant was also required to pay to the complainant a monthly allowance for the maintenance of a minor child who was given into her custody.   Upon the death of the defendant, it was claimed by the persons interested in his estate that the decree was not operative after the death of Mr. Creyts.   Justice HOOKER, speaking for the court, said:

"The original decree was not discharged by the death of the complainant.   No one would contend that the provision for the wife would have been discharged by his death or before payment, or before it became due.   And in *Shafer* v. *Shafer,* 30 Mich. 163, an appeal by the wife, after a husband's death, was held allowable if she was dissatisfied with the decree for alimony, and in the matter of *Seibly* v. *Ingham Circuit Judge,* 105 Mich. 584 [63 N. W. 528], we held that it was a proper practice to permit the revivor of a divorce suit to permit proceedings upon the decree to adjudicate the reserved question of alimony, upon bringing in the representative.   These cases necessarily imply the authority to retain jurisdiction of the property of the husband in a divorce case after the death of the husband, to see that it be applied to the support of the wife and infant children.   See, also, *Smith* v. *Waalkes,* 109 Mich. 16 [66 N. W. 679].   In *Miller* v. *Miller,* 64 Me. 484, a case in which a similar order to that in this case was made, it was held that such order was not discharged by the death of the husband.   It is possible that, in the absence of the statute, the court could do no more than to enforce the decree heretofore made, by proceedings to which the representative should be made a party, if it could do anything in the premises; it being suggested that in that case the wife would be on the same footing with any other claimant, and be obliged to obtain and be satisfied with allowance and payment through probate court.

"Under our statute, which authorizes the court to make the decree a charge upon the property, and to change and alter the decree from time to time, in the interests of justice (3 Comp. Laws, §§ 8640, 8641), we are of the opinion that, where the rights of *bona fide* holders have not intervened, the court may alter, amend, enlarge, or diminish the decree, as the necessities of the one and the ability of the other party may require, and that it may protect the child by making the decree a charge upon property to prevent its dissipation, and that the power is not determined by the death of the husband.   *   *   *

"Both parties indicate a desire that the decree be further modified by fixing the period for which such provision shall continue, and determining the amount of the present value of the same, and providing for the immediate payment of such sum, in place of the periodical payments provided for by the original decree.   We have no doubt of our authority to do this, under the provisions of the statute referred to, and, rather than to keep the estate open and defer distribution with the expense and possible loss necessarily attendant upon such a policy, we approve the alternative suggestion, and we hereby fix such amount, including arrearages and interest thereon, at the sum of $825, and make the same a lien upon the property of the estate not heretofore appropriated by order of the probate court, with priority over all other claims of the widow, heirs, and next of kin, except rights of dower."

In *Maslen* v. *Anderson*, 163 Mich. 477 (128 N. W. 723), a decree of divorce was granted, and alimony was given to the wife payable to her monthly as long as she should live and remain unmarried.   Later Mr. Anderson died, and the executor of his estate attacked the divorce decree upon numerous grounds.   The court discusses at length the jurisdiction of circuit courts in chancery in alimony cases, and holds it is strictly statutory.   The court found that some things were included in the divorce decree that the court had no jurisdiction to include; but also held that—

"We are satisfied with the decree of the court below, in so far as it deals with the subject of alimony to be paid to Louisa A. Anderson."

It will be remembered that this alimony was payable monthly during the life of Mrs. Anderson unless she remarried, and the case was decided after Mr. Anderson's death. The language of the statute which appears in the opinion of *Brown* v. *Brown, supra,* is not ambiguous. It and the opinions from which we have quoted justify the modification of the decree as to alimony after the death of the husband.

On the part of the appellant, it is urged that the allowance is too large. Mr. Pingree died leaving but one child, a boy now nine years of age. The stock decreed to the complainant is 2,000 shares out of 7,667 shares. We do not think this can be said to be excessive. See *Berryman* v. *Berryman,* 59 Mich. 605 (26 N. W. 789); *Walsh* v. *Walsh,* 61 Mich. 554 (28 N. W. 718); *Kirkland* v. *Kirkland,* 111 Mich. 166 (69 N. W. 233); *Van Der Beck* v. *Van Der Beck,* 124 Mich. 479 (83 N. W. 150); *Ferguson* v. *Ferguson,* 147 Mich. 673 (111 N. W. 175).

It is urged that an annuity should be made or a cash sum decreed. We have examined the propositions of counsel, and are not convinced that the decree is unwise as it is.

Some criticism is made of the action of the executrix and trustee of the estate in declining, after the death of Mr. Pingree, to make the monthly payments. In view of the amount involved, the legal questions presented, and the advice of counsel, we think this criticism is not well taken. The executrix and trustee might well desire the opinion of the court before making these very considerable payments.

The decree of the court below is affirmed, but without costs to either party.

STEERE, McALVAY, STONE, and OSTRANDER, JJ., concurred.