Argued June 1; modified June 29, 1943

# PRIME v. PRIME ET AL.

(139 P. (2d) 550)

Before Bailey, Chief Justice, and Rossman, Kelly, Lusk, Brand and Hay, Associate Justices.

*George A. Rhoten,* of Salem (Rhoten & Rhoten and Sam F. Speerstra, all of Salem, on the brief) for appellants.

*Robin D. Day,* of Salem, for Pioneer Trust Co., respondent and cross-appellant.

*John H. Carson,* of Salem (Carson, Carson & Carson, of Salem, on the brief) for Edith B. Prime, respondent.

38

■■ BRAND, J. Under the pleadings we must determine whether the so-called property settlement above set forth, when approved by the order of the court in a divorce case, is an enforceable claim against the estate of Glenn E. Prime, deceased. It is undisputed that all installments were paid until the death of Glenn E. Prime. The only question relates to the validity of the installments accrued and accruing subsequent to the date of his death.

In seeking a solution, we must attempt, with due regard for authority, to harmonize two conflicting principles of law, both valid in their own proper setting. The obligation of contracts must be respected and their terms enforced. Courts do not ordinarily remake the agreements of private parties. On the other hand, the decree of a court of equity in a divorce suit respecting the obligation of the party at fault to contribute to the maintenance of the other is, by statute, subject to modification. Such a decree constitutes a final determination from which an appeal may be taken (as in *Stout v. Stout*, 99 Or. 133, 195 P. 153). Yet, it may

be modified as to the future upon suitable showing of changed circumstances. O. C. L. A. 9-915. The case at bar presents a combination of the two situations, a contract of the parties apparently binding, incorporated in a decree apparently subject to modification.

We will first consider the situation as it was prior to the death of the defendant. It is to be noted that we are dealing with executory provisions of the decree and contract. That a property settlement based on contract and approved by the court may be binding on the parties and beyond the power of the court to modify is beyond question. *State ex rel. v. Kiessenbeck*, 167 Or. 25, 114 P. (2d) 147. Such a case was *Taylor v. Taylor*, 154 Or. 442, 60 P. (2d) 942, wherein property held by and standing in the names of both parties was divided by an agreement which the court found to be equitable and which this court enforced. (See also *Geis v. Gallus*, 130 Or. 619, 278 P. 969, an executed property settlement approved by the court.) There is, of course, no question as to the binding effect of a contract for maintenance when approved by decree of the divorce court, for the decree alone is binding, but the decree alone, though final and appealable and hence binding, is subject to modification upon a showing of changed conditions. The question is whether a decree for maintenance when based on an agreement of the parties which has been approved by the court as equitable is also subject to modification upon a like showing.

Even in the case of contracts between husband and wife in anticipation of divorce which merely provide for the present division of their property to the accumulation of which both have contributed, it has been held that equity would refuse enforcement if the agreement was inequitable. In *Hill v. Hill*, 124 Or. 364, 264 P. 447,

this court refused to enforce such a contract and disposed of the identical real property which was the subject of the contract according to its own determination of the rights of the parties. It is apparent that contracts in anticipation of divorce are subject to peculiar rules not applicable to ordinary contracts for the disposition of property or the payment of money. It cannot always be said of such agreements that the mere presence of mutual assent and legal consideration obligates the promissor to pay and binds his estate upon his decease. Nor do the courts as in ordinary contracts refuse to weigh the consideration received as against the value of the promise given. *Hill v. Hill,* supra. As to provisions of a decree requiring installment payments for future maintenance of the wife, the editors of A. L. R. have well said:

"* * * the general rule is that where a court has the general power to modify a decree for alimony or support, the exercise of that power is not affected by the fact that the decree is based on an agreement entered into by the parties to the action." 109 A. L. R. 1068, and notes citing many cases.

We cannot, however, glibly announce a rule of thumb that all property settlements when approved by the court can be modified upon changed conditions. We have already noted the distinction as to fully executed transactions, and there may be instances in which even an executory agreement for future periodical payments, when approved and incorporated in a decree, should be held invulnerable to modification, even in the event of changed conditions. For example, if husband and wife are each the owners of real property, and if they agree that in lieu of a division of their property between them the rights of the wife shall be

liquidated by means of payments in the nature of an annuity, and if the agreement shows and the court finds that such provision was adopted as and constitutes a fair method of liquidating the actual property rights of the wife and approves the agreement in the decree, we suppose that such payments in the nature of an annuity would not be subject to later modification in the event of changed conditions. *Parker v. Parker,* 193 Cal. 478, 225 P. 447. The difficulty is in drawing the line between approved agreements in the nature of alimony which are subject to modification and approved agreements in the nature of an annuity employed as a means of adjusting the wife's property rights. In any event, it is clear that the mere fact that there is an agreement supported by technical consideration such as waiver of court costs, attorney's fees and the like does not deprive the court of power to modify a divorce decree for periodic payments of maintenance in the event of changed conditions. See note 58 A. L. R. 639 and 109 A. L. R. 1068.

In *Warrington v. Warrington,* 160 Or. 77, 83 P. (2d) 479, it was said that no property rights were involved, but it is reasonable to assume that technical consideration for the agreement concerning alimony existed. The court said:

"The right to alimony is, therefore, based upon the statute and not upon any contractual obligations. The law is designed for the protection of the parties and to promote the welfare of society. How, then, can parties, by any private agreement, oust the court of jurisdiction to regulate the payment of alimony when the status of the parties justifies a modification? Any agreement of the parties in reference to the payment of alimony was made in view of the statute authorizing the court to modify

the same. The mere fact that the court incorporated in the decree the stipulation concerning alimony is immaterial. It is entirely possible that, while the court undoubtedly considered the stipulation of the parties fair and equitable at the time the decree was rendered, it might, upon a showing of subsequent changed conditions, deem it unjust. To hold otherwise would defeat the very purpose and spirit of the statute.

"Undoubtedly the decided trend of modern authorities is to the effect that, where a court has the power vested in it by statute to modify a decree for alimony, the exercise of such power is not affected by the fact that the parties agreed concerning the amount of alimony to be paid and that such stipulation was incorporated in the decree." *Warrington v. Warrington* (supra) 160 Or. at p. 80. (Citing many cases.)

In *Phy v. Phy,* 116 Or. 31, 236 P. 751, 240 P..237, 42 A. L. R. 588, the parties executed a contract in anticipation of divorce wherein it was provided:

"That this agreement is a property settlement and alimony, shall be taken as a full and complete settlement of all property interests and alimony between the parties and neither party hereto shall be compelled to pay, nor either party hereto can recover, any more property or alimony than is as herein set out. And such property settlement and agreement of alimony shall be in full for all property rights, costs, attorney's fees and alimony, in any suit whatsoever."

The contract provided also for the conveyance to the wife of specified personal property and also for the payment of specified amounts of money and additional monthly payments "not to exceed" a certain sum. The contract was approved by the court. Thereafter, the former husband moved for a modification of the provi-

sions relative to alimony upon the ground that the former wife had remarried. The court said: ·

"When the allowance for alimony or maintenance arises from a consideration of the restitution of property brought to the husband by the wife, the decree awarding such maintenance should be regarded as a final adjudication of the matter. But, as said by Mr. Justice Wolverton in speaking for this court in *Brandt v. Brandt,* 40 Or. 477, 486 (67 Pac. 508, 510):

" 'Where it is made as a matter of support and maintenance merely, then the changed condition of the parties, as where the faculties of the husband have diminished, or the divorced wife has acquired other facilities or means of support, will warrant such a revision or modification, diminishing or cutting off the allowance *in toto,* as may seem reasonable and proper.' " *Phy v. Phy* (supra), 116 Or. at p. 37.

In the Phy case this court was not controlled by the wording of the contract to the effect that it constituted a "property settlement."

"There is no contention here that the wife ever brought any property into the estate of her husband, or that the award of alimony or maintenance was based upon the relinquishment of any property rights."

Again, the court said,

"*The stipulation shows both a property and an alimony settlement, but it does not show that the alimony awarded was based upon property rights of the wife.* In this jurisdiction, a decree for alimony is subject to modification by the court in which it was entered, according to the varying circumstances of the parties." *Phy v. Phy* (supra) 116 Or. at pp. 39, 44. (Italics ours.)

We think that *Phy v. Phy* supports the theory that, subject to exceptions already noted, an agreement re-

·citing that it constitutes a property settlement and also providing for future periodic payments will not be deemed to create a vested right beyond the power of the court to modify unless something more is shown than the designation by the parties of the agreement as a "property settlement" and the existence of technical consideration. As to the executory provisions of an agreement, if they are found to be in the nature of alimony, the same power which may refuse to approve them in the first instance may also modify them after ·approval in the event of changed conditions. The latter power is no greater than the former. The case indicates that an agreement in anticipation of divorce may constitute in part a genuine property settlement and in part a bare agreement for alimony made in contemplation of the statute authorizing modification.

In *Warner v. Warner*, 145 Or. 541, 28 P. (2d).625, the parties stipulated for the payment of permanent alimony at the rate of $50 per month, which provision was adopted in the decree. The abstract of record discloses that the stipulation also provided as follows:

"This stipulation for settlement of alimony is a property settlement between the parties hereto and it shall not be modified or set aside except by mutual consent of the parties. ·

"The plaintiff agrees that she will not ask for judgment and decree for any sum of money other than that above specified in this stipulation, that she waives her rights to attorneys' fees and costs in this case, but by this stipulation she does not waive her right, but reserves her right to enforce the payment of said alimony by all legal means."

Thereafter the defendant moved for a modification of the decree by reason of his changed financial circumstances. The plaintiff former wife contended that the

stipulation was based on a contract for which consideration was given that it was not subject to modification. The court said:

> "After a careful study of the opinions in this state, we conclude that if the allowance to the plaintiff in the divorce suit was simply for maintenance or alimony and not a settlement of property rights, then, in a proper case, the court in its discretion may set aside or modify the decree for alimony. *Andrews v. Andrews,* 144 Or. 200, 24 P. (2nd) 332."

*Warner v. Warner,* supra, 145, at p. 543.

In that case it appears from the evidence that the parties had no property either at the time of the marriage or at the time of the divorce, but it is clear that there was such consideration as would have supported an ordinary contract. In addition to other reasons of less persuasive weight, the court held that the stipulation for the maintenance was made in contemplation of the statute which gives the court power to modify the decree, and the stipulated payments were accordingly reduced.

In *Herrick v. Herrick,* 319 Ill. 146, 149 N. E. 820, the parties entered into a property settlement agreement in anticipation of divorce. Among other provisions the husband agreed to pay to trustees for the support and maintenance of his wife during her lifetime the sum of $350 a month. Each party released all interest in the property of the other by way of homestead, dower or otherwise. A decree of divorce was entered which incorporated the agreement. It was held that both parties having consented to the provision for alimony, it was binding until modification.

> "* * * but that does not preclude the court which entered the decree from modifying it when there is a change in circumstances which justifies a modification.".

The court said:

"In addition to providing alimony during the joint lives of the parties, the decree, by consent, may provide for the payment of alimony as long as the wife lives (Storey v. Storey, 125 Ill. 608, 18 N. E. 329, 1 L. R. A. 320, 8 Am. St. Rep. 417), and thereby give a substitute for dower. Adams v. Storey, 135 Ill. 448, 26 N. E. 582, 11 L. R. A. 790, 25 Am. St. Rep. 329. The fact that the provision made for the support and maintenance of the wife is incorporated in the decree by agreement of the parties and adds nothing to the force of the decree and does not affect the power of the court to enter further orders respecting alimony. Southworth v. Treadwell, 168 Mass. 511, 47 N. E. 93; Lally v. Lally, 152 Wisc. 56, 138 N. W. 651.

"In the instant case the agreements, which by the consent of the parties, and no doubt at the instance of appellant, were incorporated in the decree as a proper provision of alimony, became merged in the decree when entered, and thereupon lost their contractual nature, at least, to the extent that the court has the power to change and modify the decree, upon the application of either party, when a change of circumstances justifies the modification." *Herrick v. Herrick,* supra, 149 N. E. at p. 823.

This is one of the cases cited with approval by this court in *Warrington v. Warrington,* supra. We think that the ruling in the Herrick case did not at all imply that the court could later modify provisions of the agreement relative to the division of property once they had been approved. It only meant that the portion of the contract and decree relative to future installment payments in the nature of alimony was subject to future order of the court.

In each of the following cases we find that there was an agreement presently executed or presently to be

executed concerning the property rights of the wife, plus an executory agreement for periodic payments for the wife's maintenance supported by consideration and approved by the divorce decree. Yet, in each case it was held that the portion of the contract and decree relating to periodic payments should be modified upon showing of changed conditions. *Aldrich v. Aldrich,* 166 Mich. 248, 131 N. W. 542; *Skinner v. Skinner,* 205 Mich. 243, 171 N. W. 383; *Puckett v. Puckett* (Cal.) 127 P. (2d) 54; *Maginnis v. Maginnis,* 323 Ill. 113, 153 N. E. 654; *Plotke v. Plotke,* 177 Ill. App. 344; *Wilson v. Wilson,* 186 Ark. 415, 53 S. W. (2d) 990; *Reynolds v. Reynolds,* 53 R. I. 326, 166 A. 686; *Wilson v. Caswell,* 272 Mass. 297, 172 N. E. 251; *Eddy v. Eddy,* 264 Mich. 328, 249 N. W. 868; *Brown v. Brown,* 209 Mo. App. 416, 239 S. W. 1093; 27 C. J. S. 986 § 238-d; and see cases cited in 58 A. L. R. 639, note, and 109 A. L. R. 1068 note.

██ It further appears that where by statute the court has power to modify executory provisions it will retain that power although the agreement of the parties and the decree of the court provide that the original allowance shall never be changed. *Kelly v. Kelly,* 194 Mich. 94, 160 N. W. 397. Although there are conflicting decisions upon substantially every question relating to the power of courts to modify divorce decrees for future payments, we find in the above cited cases an underlying principle which may be stated as follows: An agreement of the parties approved as fair in the divorce decree may provide for a division of property rights and also for the payment of future installments for maintenance. Although both provisions be included in the same instrument they may be treated as separable, the provisions for division of the property being binding and beyond the power of the court to

modify, the provisions concerning future installments for maintenance being, however, subject to modification in the event of changed conditions. The many authorities cited can be explained upon no other theory than that the executory provisions are to be deemed separable from the provisions relative to the division of property. As to the executory provisions, the parties are deemed to have contracted in view of the statute authorizing modification thereof. There is sound reason in support of this principle. The presently executed provisions of the property settlement are approved by the court as of the date of the final decree, and as to them the possibility of future changes in the financial condition of the parties becomes immaterial. The executory provisions of the decree, however, are to be performed under conditions which may be wholly different from those prevailing at the date of the decree, and consequently the same equitable power which, when exercised in the original decree, may reject a previously made contract for the division of property if deemed unfair, as in *Hill v. Hill,* supra, may also, subject to the exceptions previously noted, reject and modify a final decree when conditions have arisen which did not exist when that decree was made but which do exist when its terms are to be executed.

In the light of the authorities cited, we can now examine the question whether the decree for continuing maintenance should be declared to be a valid claim against the estate of Glenn E. Prime, deceased. The contract provided for payment to the wife of $35 per month "until death or remarriage." The decree provided that said settlement was fair and is approved, "and that said settlement shall forever remain binding upon the parties to this suit." We cannot dispose of the

question by holding that the parties did not in fact intend to bind the estate if defendant predeceased the plaintiff.

■ The following authorities indicate that as a matter of pure construction, unaffected by any consideration of the court's power of modification, the decree in the case at bar would indicate an intention to bind the husband's estate if the wife should outlive him. *Jennings v. First National Bank*, 116 W. Va. 409, 180 S. E. 772, 100 A. L. R. 494; *Barnes v. Klug*, 129 App. Div. 192, 113 N. Y. S. 325; *Farrington v. Boston Safe Deposit & Trust Co.*, 280 Mass. 121, 181 N. E. 779. It appears that the express words employed do manifest such an intent, although it is held that no decree should be given that construction unless it clearly appears that such was the intent of the court. 27 C. J. S. p. 1000 § 240-b, notes 16, 17 and 18. *Murphy v. Shelton*, 183 Wash. 180, 48 P. (2d) 247. The right to receive alimony and the corresponding duty to pay it are generally considered to have terminated on the death of either of the two parties, at least where no statute to the contrary exists, and the judgment or decree is silent on the subject. 37 C. J. S. p. 999, § 240-b.

■ But assuming that the decree manifested an intention to bind the husband's estate, the question remaining for decision is whether or not it should be given that effect. The contract of the parties does not show that the agreed installments were in fact deferred payments for any property owned or contributed by the wife, nor did the court in the divorce decree approve the installments on any such theory. It is true that there was consideration in the property settlement of the parties. The evidence presented in this suit for declaratory judgment discloses that the defendant

stripped himself of substantially all his property by the agreement in question, but it also indicates that he did retain a small tract of wild land of undetermined value, and it follows that the wife by virtue of the agreement waived an inchoate right of dower in such land. Even if some such inchoate right incidental to the marriage relationship was waived, still we think that the provision for monthly payments was a severable one in the nature of alimony and was, during the lifetime of the husband, subject to modification upon proof of changed conditions. If that is true, then we can see no reason why that portion of a decree which is subject to modification during the life of the husband should become forever binding upon his estate when he dies. If the provision for monthly payments is to be viewed as in the nature of alimony, and we so hold, then the question is whether the court has power to extend such payments beyond the lifetime of the defendant. Upon this question, there is a conflict of authority. The following cases support the view that a decree unsupported by contract may validly impose an obligation to pay alimony which will bind the defendant's estate: *Farrington v. Farrington,* supra, *Southard v. Southard,* 262 Mass. 278, 159 N. E. 512; *Hale v. Hale,* 108 W. Va. 337, 150 S. E. 748; *Murphy v. Shelton,* supra; *Gunderson v. Gunderson,* 163 Minn. 236, 203 N. W. 786; *Murphy v. Moyle,* 17 Utah 113, 53 P. 1010, 70 Am. St. Rep. 767; *Pingree v. Pingree,* 170 Mich. 36, 135 N. W. 923. Most of these cases are based upon statutes broader than ours which authorize discretionary decrees concerning the *"estate"* and maintenance of the wife. There is very substantial authority to the effect that the court cannot by divorce decree extend the obligation of support in the nature of alimony so as to bind the husband's estate. *Wilson v. Hinman,*

182 N. Y. 408, 75 N. E. 236, 2 L. R. A. (N. S.) 232, 108 Am. St. Rep. 820; *Daggett v. Commissioner of Internal Revenue*, 128 Fed. (2d) 568 at 574; *Roberts v. Higgins*, 122 Cal. App. 170, 9 P. (2d) 517; 27 C. J. S. p. 999, § 240, note 14; 101 A. L. R. 324, par. 3 et seq., citing authorities on both sides.

■ In *Mansfield v. Hill*, 56 Or. 400, 107 P. 471, 108 P. 1007, a divorce decree required the husband to pay to the wife for the support and education of the children, $15 each month *"until the further order of the court."* (Italics ours.) The court held that the decree constituted a continuing liability against the husband's estate. It certainly has not been the practice in this state to construe a decree for alimony, when thus qualified, as binding the husband's estate. As a matter of construction *Mansfield v. Hill* is wrong and must be overruled, there being no clear expression of intention to bind the estate. As a matter of substantive law and under our statute, the decision is of doubtful validity. The estate of a deceased husband is not generally liable for the support of minor children. They may be disinherited by his will. Whence comes a power to bind that estate? The only authorities cited by Mr. Justice Aikin in *Mansfield v. Hill* were based on statutes wholly dissimilar to ours and which authorized alimony "out of the estate" of the husband. There is no similar provision in O. C. L. A. 9-914, which provides, "for the recovery *from the party at fault* such an amount of money in gross or installments as may be just and proper" (Italics ours) for the maintenance of the other. If the trial court in the absence of any contract would have had the power to bind the husband's estate to the payment of alimony, then it also would have had the power to modify the decree after his death. *Hale v.*

*Hale,* 108 W. V. 337, 150 S. E. 748 at 749; *Gunderson v. Gunderson,* supra; *Pingree v. Pingree,* supra; *Kirkbride v. Van Note,* 275 N. Y. 244, 9 N. E. (2d) 852, 112 A. L. R. 243; 27 C. J. S. p. 1091 § 277-b, note 8. Consequently, a declaratory judgment establishing a continuing liability for the life of the wife would be inappropriate. If, as we think, the court had no such power under our statute, then the provision of the decree for alimony would end with the life the defendant, regardless of the language used by the court. *Roberts v. Higgins,* supra; *Wilson v. Hinman,* supra; *Johns v. Johns,* 166 N. Y. 613, 59 N. E. 1124.

The fact that the divorce court in the absence of contract may have no power by decree to bind the deceased husband's estate to pay *alimony* does not necessarily imply that the parties are without power to do so or that the court may not approve such agreement in the decree. As said by the editors of A. L. R.:

"* * * it is generally recognized that the husband may, under a separation agreement, provide for periodic payments during the life of the wife so as to make such payments a continuing charge on his estate after his death." 100 A. L. R. 500, citing many cases.

■ Our point is that the same tests which determine the power of the court to modify an executory provision of the decree during the life of the parties should also determine whether or not such a decree shall bind the estate of the husband after his death. If, during the life of the parties, the provision of the decree be found to be in the nature of alimony and therefore subject to modification even if supported by contract, then the same considerations will establish that such a separable executory provision retains the character of

alimony and ends with the life of the husband. Such contractual provisions for periodic payments must be deemed to have been merged in the decree and made in contemplation of the statute authorizing modification and equally to have been made in contemplation of the rule of our law that payment of that character ends with the death of the husband.

■ We hold that the provision of the decree requiring payment of $35 per month for the life of the wife, although supported by contract, has not been shown to be payment for any property of the wife in the nature of an annuity and was not approved by the court as such, but is, on the contrary, a stipulation for payment in the nature of alimony subject to modification during the life of the parties and terminating on the death of the defendant.

The foregoing disposes of a question of great interest to the profession but of little concern to the parties, since it was brought here by none of them except the executor, who was in the position of a stakeholder.

The second and strongly contested issue relates to the matter of mutual wills, executed by Glenn E. Prime and Edith B. Prime, his wife. On February 4, 1935, they executed a joint will containing, among others, provisions which we shall briefly summarize. All debts and funeral expenses were to be fully paid. The second and critical paragraph of the will provided, "Our joint estate consists of real and personal property in the state of Oregon, namely, * * *." Seven separate items are then specified. The first six designate in most general terms items of real or personal property, such as "a service station", "a residence in Salem, Marion County, Oregon", and the

like. The last item, with which we are particularly concerned, is as follows: "life insurance." It was then provided that "said real and personal property may change during our lifetime to other real or personal property." None of the seven items mentioned in the will as belonging to the joint estate was sufficiently described to make identification possible without extrinsic evidence. The will then provided:

"The above property, both real and personal, at the time of the death of either of us, shall be held by our joint executor, hereinafter named, during the life-time of the survivor of us, and the use and income thereof to be enjoyed by such survivor as he or she may deem best during the remainder of the life of such survivor, to be paid by our executor and trustee hereinafter named."

The fourth paragraph provided that upon the death of either of the signers the survivor shall convey all the joint property so as to form a trust for the survivor during his or her lifetime and for the minor children of Glenn E. Prime, "and said survivor, and executor and trustee hereinafter named shall see that said children are properly educated." Upon the death of the survivor, after the payment of debts, the property was to be held in trust for said minor children, Glenn E. Prime, Jr., and Mary Jean Prime, who were the son and daughter, respectively, of Glenn E. Prime, and his former wife, Velma Prime, the plaintiff herein. Numerous other provisions related to the appointment of an executor or trustee, the guardianship of the children, and the like. The complaint of Velma E. Prime, divorced wife of Glenn E. Prime, deceased, describes in detail the real property referred to in the will as joint property and alleges that the same is in the possession of the defendant, Edith B. Prime, who

claims to be the owner of it. Plaintiff then prays for a declaration by the court that by virtue of the joint will Edith B. Prime became liable for all payments due or to become due under the property settlement between Glenn E. Prime and his former wife, Velma E. Prime, the plaintiff herein, and for a decree requiring Edith B. Prime and the Pioneer Trust Company to set up the trust estate provided for in the will out of the property referred to in the will as the "joint estate." Upon the issues made by the complaint and the answer of Edith B. Prime the cause was tried, and the trial court held that the joint will was void as respects Edith B. Prime and that the real estate described in the will as joint property belonged to Edith B. Prime. The plaintiff, Velma E. Prime, and her two children, Mary Jean Prime and Glenn E. Prime, Jr., appeal.

The evidence discloses that the real property which was adjudged to belong to Edith B. Prime had been owned by her and her husband as tenants by the entirety. But for the joint will, it is clear that the property would have belonged to Edith B. Prime as surviving tenant upon the death of her husband. Not only was the real property thus held, but in truth after Glenn E. Prime had been divorced from the plaintiff, Velma E. Prime, and when in June, 1931, he married Edith B. Prime, he had little or no property, and his debts undoubtedly equalled his modest assets. On the contrary, Edith B. Prime brought to the marriage approximately $13,000 in cash, and it was her money invested and reinvested, coupled with the business acumen of herself and her husband, that produced the property that stood in their joint names as tenants by the entirety. After the death of her husband, Edith B.

Prime refused to convey the property to the trustee, and this proceeding resulted. An analysis of the evidence, which is in conformity with her pleading, will disclose the reason for her refusal.

At the trial, the plaintiff, Velma E. Prime, introduced the will and offered extrinsic evidence to identify each of the first six items mentioned in the will as "joint property," but she did not attempt to identify the seventh item which was life insurance. There was no insurance actually appearing on its face to be joint property of the parties to the will; consequently the defendant Edith B. Prime undertook to show to what insurance the will referred. This was exactly what the plaintiff had done as to the first six items mentioned in the will. The defendant objected to any evidence tending to alter the terms of the will,

> "* * * except that would be necessary to explain ambiguities or indefiniteness appearing in the instrument itself."

Counsel further stated,

> "Our objection goes to any testimony which does not have to do directly with the problem of what is meant by the term 'life insurance' in this will."

Over this objection the court received testimony which convincingly disclosed that at the time of the execution of the joint will there was outstanding insurance in the amount of $23,000 on the life of Glenn E. Prime, payable to his children, but subject to the right of the insured to change the beneficiaries. He also owed debts to the amount of $13,000. The will was executed after a long discussion at which the only persons present were Glenn E. Prime, Edith B. Prime and Robin D. Day, who was then attorney for Glenn E. Prime,

and who appears in this case as attorney for the Pioneer Trust Company, the executor of the last will and testament of Glenn E. Prime. The defendant, Edith B. Prime, testified in detail and at length concerning the discussion which was had at that time. Her testimony was corroborated by that of Robin D. Day. Their testimony is uncontradicted, and may be summarized briefly. Glenn E. Prime desired that the real property should, upon the death of himself and his wife, go to his two children by his former marriage. In view of the fact that the real estate was the product and increment from the $13,000 which Edith B. Prime had brought to the marriage and of the further fact that they were then indebted in the approximate amount of $13,000, a considerable portion of which had been incurred by Glenn E. Prime prior to their marriage, Edith B. Prime was unwilling to place the joint real estate in a trust fund for the children unless the insurance on the life of Glenn E. Prime was also to be made a part of that fund. It was therefore agreed that the beneficiaries of the life insurance of Glenn E. Prime would be changed so that the $23,000 should go into the trust fund. The debts were to be paid from this insurance, and the balance, along with the income from the real property, was to inure to the benefit of Edith B. Prime during her lifetime, and the principal as well as all of the real estate was to go to the children upon the death of Edith B. Prime. It was upon this understanding that Robin D. Day inserted the seventh item "life insurance" in the joint will as a part of the joint estate of the husband and wife. There was also a smaller policy of life insurance upon the life of Edith B. Prime, but there is no hint in the testimony that the provision of the will referred to that policy, and it conclusively

appears that the seventh item in the will was intended
to describe $23,000 in insurance on the life of Glenn E.
Prime. The testimony further shows that Glenn E.
Prime, on the day that the will was executed, called
his insurance agent with reference to a change in the
beneficiaries of the policies, although it is not clear
that he made contact with the agent at that time. Edith
B. Prime and Robin D. Day both believed that the
transfer had been made and that the life insurance had
become a part of the joint estate. The fact, which was
discovered only after the death of Glenn E. Prime, is
that no change was made in the beneficiaries of the
policies, and the $23,000 of life insurance was paid
directly to the children of Glenn E. Prime and Velma E.
Prime, his former wife.

Two simple rules of law are sufficient to justify the
ruling of the trial court in receiving the evidence which
we have summarized. O. C. L. A. 2-214, which contains
the legislative statement of the parol evidence rule,
provides further,

> "But this section does not exclude other evi-
> dence of the circumstances under which the agree-
> ment was made, or to which it relates, as defined
> in section 2-218, or to explain an ambiguity, intrinsic
> or extrinsic * * *. The term 'agreement' in-
> cludes deeds and wills as well as contracts between
> parties."

Section 2-218 provides as follows:

> "For the proper construction of an instrument,
> the circumstances under which it was made, in-
> cluding the situation of the subject of the instru-
> ment, and of the parties to it, may also be shown,
> so that the judge be placed in the position of those
> whose language he is to interpret."

The character of the testimony and the surrounding circumstances satisfy us of the truth thereof, and we are therefore convinced that the seventh item listed as a part of the joint estate referred to the insurance on the life of Glenn E. Prime. Even if we should credit Edith B. Prime with a veritable plethora of benevolence, it can scarcely be believed that she would agree that all of the property which was the product of her life savings should be tied into a trust fund for the benefit of the children of her husband's divorced wife, that she should be obligated to pay $13,000 of his debts, that she should assume the responsibility of paying $35 a month to the former wife of her husband during the life of such wife, and that she should, according to the words of the will, see that said children (the children of Velma E. Prime) are properly educated, while at the same time agreeing that the only substantial asset belonging to her husband, namely, his life insurance, should be paid directly to the two children.

 The provision of the will was ambiguous. Convincing testimony identified the joint property described as "life insurance." Glenn E. Prime, by failing to provide that the proceeds of his life insurance should go into the joint estate, breached the contract which was to be found in the joint will in a substantial particular, and Edith B. Prime was thereby released from any obligation thereunder. The children received $23,000 of life insurance. Edith B. Prime as survivor of a tenancy by the entirety became the owner in fee of the real property so held.

"A breach or non-performance of a promise by one party to a bilateral contract, so material as to justify a refusal of the other party to perform a contractual duty, discharges that duty." Restatement of the Law of Contracts, § 397; and see §§ 274, 275.

Various additions and amendments to the descriptions of the joint property were made at the time of the trial, but we were assured at the argument before this court that the descriptions as contained in the decree of the circuit court are correct. We were further assured that there is an inadvertent or typographical error in that portion of the decree which reads as follows:

> "It is further ordered, adjudged and decreed by the court that plaintiff is the owner of 200 shares of the capital stock of the Iron Fireman Company * * *."

The word "plaintiff" should be changed to the word "cross-complainant" so it will refer to Edith B. Prime and not to the plaintiff, Velma E. Prime. Edith B. Prime is entitled to her costs and disbursements against the defendants, Velma E. Prime, Mary Jean Prime and Glenn E. Prime, Jr. No costs should be awarded to or against the Pioneer Trust Company.

Upon the appeal of the Pioneer Trust Company, that portion of the judgment which holds that the estate of Glenn E. Prime is liable to pay alimony to Velma E. Prime is reversed. The decree in favor of Edith B. Prime is affirmed.