Argued March 4, affirmed March 30, rehearing denied May 25, 1915.

## WEBER *v.* RICHARDSON.*

(147 Pac. 522; 147 Pac. 1199.)

**Appeal and Error—Findings—Conclusiveness.**

1. A finding on conflicting testimony of witnesses appearing before and personally known to the court will not be disturbed on appeal.

**Vendor and Purchaser—Bona Fide Purchaser—Notice—Instrument not Entitled to Record.**

2. The recording of a contract neither sealed, witnessed, nor acknowledged does not impart notice.

[As to effect of recorded instrument not entitled to record, see note in Ann. Cas. 1913B, 1070.]

**Trusts—Declaration of Trust—Failure to Give Notice of Trust.**

3. Where a purchaser, to procure money to pay on the contract, made a contract with a third person to advance money, and agreed to secure the title to the land and hold one half for the third person and execute a declaration of trust, but the purchaser never legally

---

*As to how far corporation is charged with knowledge of managing officer engaged in illegal act, see note in 2 L. R. A. (N. S.) 993.

REPORTER.

recognized the third person's interest, the third person was not negligent for failure to give notice of the trust charged on the land.

### Corporations—Notice to Officers—Effect.

4.   The rule that notice to the president of a corporation is notice to it does not apply when the officer acts for himself and adversely to the corporation, in which case his knowledge is not imputed to the corporation.

> [As to notice to officer as notice to corporation, see note in Ann. Cas. 1915A, 855.]

### Trusts—Enforcement—Evidence.

5.   A purchaser of real estate, to procure money to make payments under the contract, contracted with a third person to advance money, and agreed to take title in his own name, but to hold one half of the real estate for the third person and execute a declaration of trust. The purchaser organized a corporation, and it acquired title to all the real estate and the purchaser, who was an officer, obtained stock in the corporation. The stock was transferred to another stockholder without consideration. *Held* that, though it be assumed that the corporation had no knowledge of the contract between the purchaser and the third person whereby a trust was to be charged on the land in favor of the third person, the stock was in equity impressed with a trust in favor of the third person to the amount of his equitable interest.

### Fraudulent Conveyances—Consideration—Burden of Proof.

6.   Where a transfer of property is alleged to have been fraudulent as against creditors of the transferrer, the transferee has the burden of proving payment of consideration to show that he was an innocent purchaser.

### Trusts—Enforcement—Decree.

7.   A decree which adjudges that, on payment by defendant to plaintiff of a specified sum, real estate described shall be discharged from a trust in favor of plaintiff, but if the payment is not made plaintiff shall have a lien on the property as security, must fix a time within which payment shall be made.

### Trusts—Enforcement—Decree.

8.   A decree which adjudges that, on payment by defendant to plaintiff of a specified sum, certain real estate shall be discharged from a trust in favor of plaintiff, but on a failure to pay plaintiff shall have a lien as security for the payment of the amount, must provide that plaintiff, on receiving payment or taking title, shall convey to defendant an interest in other real estate which had been conveyed to him as security.

From Multnomah: HENRY E. McGINN, Judge.

Department 1.   Statement by MR. CHIEF JUSTICE MOORE.

This is a suit by Joseph Weber and Frank I. Weber against A. B. Richardson, the Richardson Investment

Company, a corporation, and John P. Sharkey, for an accounting and to impress a lien on real property. From a decree for the plaintiffs as prayed for, the defendants Richardson and the corporation appeal.

MODIFIED AND AFFIRMED.
FURTHER MODIFIED AND REHEARING DENIED.

For appellants there was a brief over the name of *Messrs. Griffith, Leiter & Allen,* with an oral argument by *Mr. Rufus A. Leiter.*

For respondents there was a brief over the name of *Messrs. Reed & Bell,* with an oral argument by *Mr. Sanderson Reed.*

Opinion by MR. CHIEF JUSTICE MOORE.

The evidence shows that a contract was made July 20, 1908, whereby Ellis G. Hughes engaged, upon the payment of a stipulated consideration, to sell and convey to the defendant Sharkey certain real property in Waverly, a suburb of Portland, Oregon. Mr. Hughes died testate August 27, 1909, leaving as his sole heirs at law Maria L. Hughes, his widow, and Mrs. Louise J. Martin, a daughter. At the time of Mr. Hughes' death there was past due on account of the purchase price of the land $8,800 and, on unmatured installments thereof, the further sum of $16,900. Evidently to obtain money with which to pay the obligations in arrears, a written contract was made September 30, 1909, by the plaintiffs and Sharkey, whereby he secured from them $10,000, and agreed to complete the purchase of such land, to take the title in his name, but to hold an undivided half of the premises for them and to execute a declaration of such trust. The contract further provided that he should sell the land,

receive payments therefor, retain 15 per cent thereof
as commission, and on the first day of each succeeding
month render an accurate statement of the sums so
obtained to the plaintiffs, who were entitled to one
half of the money, less such brokerage. It was guar-
anteed by the writing that from the profits to be
derived from such sales the plaintiffs would double
their money, and if they failed to do so Sharkey would
make up the deficiency. This contract was never re-
corded. The last testament of Mr. Hughes was duly
admitted to probate October 18, 1909, and Mrs. Hughes
was regularly appointed administratrix with the will
annexed and thereupon qualified for the trust. Pur-
suant to an order of the County Court of Multnomah
County, Oregon, and in consideration of the payment
of a sum of money by Sharkey on account of the debt
that was past due, and the giving by him and his wife
of a mortgage of the premises, to secure $14,881.23,
the remainder of the purchase price, Mrs. Hughes in
her representative capacity and individuality, and
Mrs. Martin and her husband on November 8, 1909,
executed to Sharkey a deed conveying all such real
property. In consideration of the release by the de-
fendant Richardson of Sharkey's promissory note for
$3,500 and interest and the payment by Richardson of
the remainder of $10,000, Sharkey agreed to convey
to a corporation to be formed by them an undivided
half of such lands. G. W. Holcomb, Richardson and
Sharkey on April 22, 1910, incorporated the Richard-
son-Sharkey Company, with a capital stock of $25,000,
divided into 250 shares of the par value of $100 each.
Of these Richardson subscribed for 100 shares, Shar-
key for a like number, and Holcomb for 1 share. The
company was organized the next day by electing as
directors each of such stock subscribers who after

having duly qualified chose Sharkey president, Holcomb vice-president, and Richardson secretary and treasurer. Sharkey and his wife, on April 23, 1910, for the expressed consideration of $20,100, evidenced by the capital stock subscribed for, executed to the Richardson-Sharkey Company a deed to all such real property that remained unsold, subject, however, to the lien of the mortgage referred to, and also transferred to the corporation all the contracts that had been made for the sale of land and the right to the money then remaining due thereon, amounting to $23,468.47, whereupon shares of capital stock were issued and delivered as subscribed for.

1. The plaintiffs have received on account of the $10,000 which they furnished to Sharkey only $924.28. He on May 9, 1911, caused to be conveyed, by a corporation in which he was interested, to the plaintiff Frank I. Weber, 76 lots in Waverleigh Heights, a suburb of Portland, which real property was then heavily encumbered with liens. This deed was not recorded until August 9th of that year, when the culmination of threatened suits against Sharkey evidently induced the filing of the conveyance in the proper office. The grantee last named testified that such deed was executed and recorded without his knowledge, while Sharkey stated upon oath that the conveyance was made pursuant to an agreement with such witness who accepted the land in full settlement of all claims on account of the $10,000 so furnished. Based on this testimony the trial court found that the conveyance was intended only as a mortgage to secure the plaintiffs' demand. That court not only saw these witnesses but, as indicated by an expression in the transcript, personally knew them, and hence the finding in this particular must be upheld.

A. B. Richardson testified that on July 14, 1911, Sharkey transferred 90 of his 100 shares of the capital stock of the corporation, but it does not appear to whom they were assigned, or what sum of money or value in property, if any, was given for them.  It appears from the record of a stockholders' meeting, held August 30, 1911, that the following named persons were present and held corporate stock, viz.: A. B. Richardson, 197 shares, J. P. Sharkey, 2 shares; J. P. Mattingly, 1 share, and G. W. Holcomb, 1 share.  From this entry it is fair to infer that Richardson had secured 97 shares of the stock originally held by Sharkey, but whether he paid anything therefor is not disclosed by the transcript of the testimony.  The shares of stock held by Holcomb and Mattingly, respectively, were paid for by Richardson as testified to by him.

The stockholders of the Richardson-Sharkey Company, at a special meeting held August 30, 1912, by a vote of a majority of all the stock, adopted supplementary articles, whereby the name of the corporation was changed to that of the defendant, the Richardson Investment Company, and five days thereafter the Secretary of State issued a certificate acknowledging the filing and recording of such additional instrument.

It is contended by appellants' counsel that as the contract entered into between the plaintiffs and Sharkey was never recorded, and as no other stockholder ever knew anything about such agreement until this suit was instituted, the Richardson-Sharkey Company was an innocent purchaser of the real property; that in negotiating such sale Sharkey acted adversely for himself, and the knowledge he had of such trust, though he was president of the corporation, is not chargeable to it; that as between the appellants and the plaintiffs the failure of the latter to secure the

money furnished to Sharkey was due to their neglect to have the contract recorded, and the loss occasioned thereby should fall on them rather than on innocent third persons who relied upon the validity of the record title, and for these reasons an error was committed in rendering the decree herein.

2, 3. The contract entered into by the plaintiffs and Sharkey was neither sealed, witnessed nor acknowledged, and if it had been recorded, no notice would have been imparted. It is reasonable to suppose that the declaration of trust which Sharkey was to have made when he secured the title to the land would have been executed with such formalities as to entitle it to be recorded. The recognition of the plaintiffs' right in the premises never having been legally made by Sharkey, they cannot properly be accused of any neglect in failing to give notice of the trust which should have been charged upon the land.

4. The general rule, deduced from the presumption that official duty will be regularly performed, is that notice given to the president or other manager of a corporation is notice to it. This precept is usually subject to the exception that when such officer acts for himself and adversely to the corporation, the presumption referred to cannot reasonably be indulged that he would voluntarily inform his principal of any fact tending to disparage the title or to diminish the interest which he would seek to establish to his own advantage, and in such case the knowledge he possesses cannot be imputed to the corporation: 1 Am. & Eng. Ency. Law (2 ed.), 1145; 10 Cyc. 1063; Angell & Ames, Corp., § 308; Clark & Marshall, Corp., p. 2207. In a note to the case of *Bookhouse* v. *Union Publishing Co.*, 2 L. R. A. (N. S.) 993, 996, in referring to two qualifi-

cations of the deviation from the general rule, it is said:

"(1) That the exception does not apply when the officer of the corporation, though he acts for himself or a third person, is also the sole representative of the corporation in the transaction. This qualification, as applied by the cases, is not at all dependent upon the question whether or not the corporation would be benefited by the transaction as a whole, if the knowl-, edge possessed by its officer were held not to be chargeable to it. (2) That the exception does not apply where the corporation, if it were held not to be chargeable with notice of the fraud of its officer, would, as a result of the whole transaction, be in a better position than if the transaction had never taken place."

5. Assuming, without deciding, that the Richardson Investment Company had no knowledge of the contract entered into by Sharkey and the plaintiffs, whereby a trust was to have been charged upon the land in their favor, and that notice thereof cannot be imputed to the corporation, a court of equity will brush aside the several transfers and look through the whole transaction when such course can be pursued without injury to innocent parties. It will not be presumed that Sharkey intended to commit a wrong when he agreed with Richardson to transfer on the latter's account an undivided half interest in the land to the corporation, and hence it must be taken for granted that he was dealing only with his own moiety in the premises. It will be kept in mind that he conveyed to the corporation the entire real property and also assigned to it the sums of money due and to mature on contracts he had made for the sale of parts of the land. As he received for the estate and choses in action thus granted and transferred corporate stock of the par value of $10,000,

such proportional part of the capital equitably belongs to the plaintiffs.

6. The testimony shows that prior to the trial herein, Sharkey had transferred this block of stock, and that Richardson held nearly all of it. A careful examination of the transcript of the testimony fails to show that he paid any consideration for this stock. It was incumbent upon him to establish that fact, but, having failed in this respect, it must be taken for granted that he was not an innocent purchaser thereof. In the notes to the case of *Hagerman* v. *Buchanan*, 14 Am. St. Rep. 732, 748, it is said:

"As a voluntary transfer must either be enforced or disregarded, according to the intent which must be imputed to the grantor at the time it was executed, it is of the utmost importance to ascertain from what circumstances the fraudulent intent should or should not be presumed. If the grantor is at the time financially embarrassed, if there are judgments rendered or actions pending against him or suits threatened, his voluntary conveyance is unquestionably fraudulent and void as against creditors."

It appears from the evidence that at one time Sharkey was wealthy, but his money being invested in suburban real property, and sales thereof having temporarily declined, he became financially embarrassed, so much so that several suits were instituted against him and he was seemingly compelled to resort to expedients which in prosperous times he would have scorned. We conclude, therefore, that the last transfer by Sharkey to Richardson of such stock was fraudulent and void as against the plaintiffs.

7. The trial court decreed that upon the payment by the defendants to the plaintiffs of $9,075.72, the remainder due, with interest, all the real property involved herein should be discharged from the trust, but

if the former failed in this respect, the latter should have a lien on an undivided one half of the premises as security for the payment of that amount, free from any encumbrances created or suffered by either of the defendants, but no time was specified within which the payment was to be made. This part of the determination will be modified so as to allow 60 days from the entry of the mandate in that court in which to raise that amount of money, and if it is not paid within that time, this decree shall stand as and for a conveyance to the plaintiffs of an undivided one half of all the real property involved and also all interests of the defendants therein as of April 23, 1910, when the deed was executed to the Richardson-Sharkey Company.

8. In preparing the decree several lots were inadvertently included, which should not have been so listed, and this error must be corrected in the mandate. As no provision was made in the decree that the plaintiffs upon receiving the amount of money awarded them, or in default thereof by taking title to an undivided half of the premises, should convey to the defendant corporation the interest which they hold by deed as security in the Waverleigh Heights lots, another alteration must be made to that effect. With these modifications the decree complained of should be affirmed; and it is so ordered.

The changes that have been indicated are not considered of sufficient importance to entitle the appellants to their costs in this court.

MODIFIED AND AFFIRMED.

FURTHER MODIFIED AND REHEARING DENIED.

MR. JUSTICE BURNETT, MR. JUSTICE MCBRIDE and MR. JUSTICE BENSON concur.

Modified and rehearing denied May 25, 1915.

## On Petition for Rehearing.

(147 Pac. 1199.)

Opinion by Mr. Chief Justice Moore.

In a petition for a rehearing attention is called to a clause in the original opinion wherein it is stated that, unless the sum of money awarded the plaintiffs is paid them within 60 days from the entry of the mandate in the lower court, the decree appealed from would stand as and for a conveyance to the plaintiffs of an undivided one half of all the real property involved, including all interests therein of the defendants as of April 23, 1910, when the deed was executed to the Richardson-Sharkey Company. It is asserted that, prior to the commencement of this suit, many tracts of the land referred to were sold and conveyed to innocent purchasers, who would sustain loss if a lien were impressed upon the real property which they purchased from the corporation last named and from its successor, the Richardson Investment Company. In answer to this contention it is sufficient to state that such purchasers were not parties to this suit, and the decree rendered herein can have no binding force as to them. When the decree is undertaken to be enforced against such persons, they will undoubtedly be given an opportunity to show that they were innocent purchasers, for a valuable consideration, and without notice of the plaintiffs' equity in the real property. It is maintained that an error was committed by this court in determining it was Richardson's duty to allege and prove that he paid a valuable and adequate consideration for an assignment of the remainder of Sharkey's corporate stock, since the *bona fides* of the transfer

was not challenged in the complaint.  The complaint
was framed on the theory that Richardson was in fact
the corporation, though a few other persons held stock
which he had purchased in order to enable them to
qualify as directors, so as to vote as he commanded in
all matters pertaining to the management of the cor-
poration.  Sharkey was in equity a trustee, and held
one half of the corporate stock for the plaintiffs: *Bis-
bee* v. *Mackay,* 215 Mass. 21 (102 N. E. 327).  It ap-
pears from the petition for a rehearing that Richard-
son controls this block of stock, having purchased it
and paid therefor a valuable consideration, a fact
which was not disclosed at the trial.  Such evidence of
corporate indebtedness having been obtained directly
from the trustee by Richardson, his ownership thereof
can be protected only by affirmatively showing he was
not chargeable with notice of the fact that the stock
equitably belonged to the plaintiffs and that Sharkey
was disposing of it in breach of the trust: Cook, Stock
and Stockholders (3 ed.), § 325.  In preparing the
complaint in the case at bar the plaintiffs' counsel
evidently were not aware of the transfer of the
remainder of Sharkey's stock to Richardson, and the
initiatory pleading should be treated as a bill for a
discovery, requiring Richardson to set forth in his
answer the nature and extent of his title and to sub-
stantiate such averment by evidence that he had paid
an adequate and valuable consideration for the stock
without knowledge or notice of any rights of the plain-
tiffs thereto.  In speaking of that which is put forth
by the party proceeded against as a reason in law or
fact why the plaintiff should not recover what he seeks,
a text-writer, touching particularly upon the subject of
a *bona fide* purchaser, remarks: ''Unless the facts ap-
pear on the face of the complaint, so as to permit a

demurrer, there can be no doubt that in the new system, as well as in the old, the defense must be pleaded, in order to be available'': 2 Pomeroy, Eq. Jur. (3 ed.), § 784. It was stipulated by counsel for the respective parties that a clause in the former opinion should be amended, so as to require the plaintiffs, upon receiving the sum of money awarded therein, or in default thereof by taking an undivided one half of the premises, to convey to the defendant Sharkey the interest which they held by deed as security in the Waverleigh Heights lots. As thus modified, the original opinion is adhered to, and the petition for rehearing denied.

MODIFIED AND REHEARING DENIED.