Argued and submitted February 18, 1987, affirmed May 11, reconsideration denied
August 12, petition for review allowed September 20, 1988 (306 Or 660)
See later issue Oregon Reports

SPADY,
*Appellant,*

*v.*

GRAVES et al,
*Respondents.*

STATE OF OREGON,
Acting by and through the
Director of Veterans' Affairs,
*Respondent,*

*v.*

GRAVES et al,
*Respondents,*

*v.*

SPADY,
*Appellant.*

(146,028; 85-0620; CA A39044)

755 P2d 128

Michael Duane Brown, Salem, argued the cause for appellant; with him on the briefs was Churchill, Leonard, Brown and Donaldson, Salem.

James N. Westwood, Portland, argued the cause for respondents United States National Bank of Oregon; State of Oregon, Department of Veterans Affairs; State of Oregon, Employment Division; State Accident Insurance Fund Corporation of Oregon; and State of Oregon, Department of Revenue. With him on the brief were Richard A. Edwards and Miller, Nash, Wiener, Hager & Carlsen, Portland.

No appearance for respondents Donald and Isabel Graves.

No appearance for respondent Portland General Electric Company.

No appearance for respondent United States of America Internal Revenue Service.

WARDEN, J.

Newman, J., specially concurring.

## WARDEN, J.

In this foreclosure action, plaintiff (Spady) appeals from that portion of a summary judgment holding that the mortgage liens of the Department of Veterans' Affairs (DVA) and United States National Bank of Oregon (Bank) are superior to hers. We affirm.

Spady and Graves were divorced in July, 1976. The dissolution judgment had attached to it and incorporated their property settlement agreement, which required Graves to pay child and spousal support through 1981 and awarded the residence to Spady, with the provision that, if she remarried and sold it, half the proceeds were to be placed in trust for the children. Spady remarried and sold the residence to Graves, who paid half of the purchase price in cash. They executed an "Agreement for Modification of Property Settlement Agreement," which stated that Spady had already received half of the selling price, that the other half would be placed in trust for the children when it was paid (which would be no later than September, 1982), that Graves had already obtained a mortgage on the property and that the agreement "shall constitute and be regarded as a second mortgage." In addition, the agreement eliminated spousal support and provided that Graves would pay for the children's schooling, transportation and clothing in lieu of child support.

Spady and Graves asked the court to modify the dissolution judgment to conform to the modified agreement. In May, 1978, the dissolution court entered an order which provided in part:

"IT IS HEREBY ORDERED AND DECREED:

"(1)   That the Agreement for Modification of Property Settlement Agreement filed herein is approved and accepted by the Court and the parties are ordered to abide by the terms thereof the same as if set forth fully herein.

"(2)   The awards of spousal and child support are hereby modified as set forth in the Agreement.

"(3)   The court consents to the modification of time and manner of establishing the trust required in the Decree as is set out in the Agreement."

The order did not recite that it incorporated the agreement, and no copy was attached. In October, 1980, Bank recorded a

mortgage on the property to secure a note given by Graves for $60,257. In February, 1981, DVA recorded a mortgage on the property to secure a note given by Graves for $81,080. Bank subordinated its loan to DVA's loan. In July, 1982, Bank recorded another mortgage on the property to secure another note given by Graves for $37,000.

Spady assigns error to the court's granting a summary judgment to DVA and Bank, asserting that the court incorrectly concluded that the order modifying the judgment was "without jurisdiction and void because it purported to modify property settlement provisions" and that DVA and Bank could collaterally attack the validity of the order. Spady does not contend that DVA and Bank had actual notice of her mortgage. However, she asserts that, although she did not record the agreement modifying the property settlement agreement, the court's entry of the order modifying the judgment constituted constructive notice of the agreement as a mortgage and that her mortgage is superior to theirs. DVA and Bank argue that the modification court lacked authority to modify the property division between Spady and Graves and that its order, therefore, was not constructive notice to them of a mortgage.

A trial court has no authority to modify the property division provisions of a dissolution judgment over a parties' objection. However, we have never addressed the issue of whether a modification may be made when the parties have agreed to it. ORS 107.135 does not include property division provisions among those which may be modified. However, the authority given the court by the statute contemplates its use only in *contested* cases. Prohibiting the modification of self-executing property division provisions *over a party's objection* serves the policy of enabling parties to rely on the finality of such provisions. That policy is not furthered, however, when, as in this case, the parties agree to the modification of provisions which are conditioned for their execution on the occurrence of future events. *See, e.g., Walters v. Walters,* 298 SE2d 338, 341 (S Ct NC 1983).

The original judgment of dissolution was in the nature of a consent judgment. It did nothing more than incorporate the property settlement agreement that had been executed by the parties into the judgment. As a general rule,

"a consent judgment may not be amended, modified, or corrected in any essential particular *except with the consent of all the parties thereto,* in the absence of fraud or mutual mistake, and this rule applies to cases where a party has acquired rights in the final result, which would be jeopardized by a change in the terms of the consent judgment." 49 CJS Judgments 598, § 329. (Footnotes omitted; emphasis supplied.)

The rule has been adopted in Oregon. *See Stites v. McGee,* 37 Or 574, 576, 61 P 1129 (1900). By necessary implication, a modification may be made when the parties consent to it. We conclude that, because the trial court had jurisdiction over the parties and the subject matter and because there is no policy against allowing modification of a judgment by stipulation of the parties in these circumstances, the trial court erred in holding that the modification order was void.

■　　　There is still the issue of whether entry of the modification order gave constructive notice of Spady's interest in the property to DVA and Bank. DVA and Bank rely on ORS 93.730, which provides:

"A certified copy of any judgment, decree or order of confirmation affecting lands in this state made in any suit may be recorded in the records of deeds in any county in which the land affected is wholly or partly situated by any party interested in the land or suit. After the transcript is so recorded, the decree is notice to all persons of such suit and the judgment, order or decree, as completely as if the entire proceedings were had originally in the county in which the transcript is recorded. The record of the transcript is prima facie evidence of title as therein determined."

DVA and Bank contend that, because the modification order contained no indication that it affected an interest in land, it was insufficient to give constructive notice.

　　　Spady replies by quoting from *Partlow v. Clark,* 295 Or 778, 786, 671 P2d 103 (1983):

"The records of the circuit court include, among other things, a register and a journal. ORS 7.010(1). The register is a record wherein the clerk enters or notes the filing of all 'papers' in a circuit court case. ORS 7.020. The journal is a record where the clerk enters the 'proceedings' of the court. ORS 7.030. In this case the defendants, by searching the records of Lane County, could have discovered the plaintiff's interest in the real property by reading the decree. The decree

> could have been found by looking in the circuit court register which would have referred the searcher to the court file. The decree shows on its face that it was entered in full in the circuit court journal."

Spady contends that we need only substitute "Marion County" for "Lane County" and "order modifying decree" for "decree" and the *Partlow* holding becomes applicable:

> "In this case the defendants, by searching the records of Marion County, could have discovered the plaintiff's interest in the real property by reading the order modifying decree. The order modifying decree could have been found by looking in the circuit court register which would have referred the searcher to the court file."

We disagree with Spady's assertion that DVA and Bank could have discovered her interest simply by reading the modification order. The order did not include a description of the property and failed even to mention that any real property was affected. It therefore gave no notice of Spady's interest and because it did not, the liens of DVA and bank are superior to hers.

Affirmed.

**NEWMAN, J.,** specially concurring.

The majority reaches the right result, but it makes an unnecessary argument and one which is, in my opinion, erroneous. I agree that Bank and DVA did not have constructive notice of Spady's mortgage, because the modification order, unlike the decree in *Partlow v. Clark*, 295 Or 778, 671 P2d 103 (1983), does not describe the real property involved. Consequently, the liens of Bank and DVA are prior to those of Spady, and the court did not err when it granted them summary judgments. Without needing to do so, however, the majority also argues that the modification court had authority, with the parties' consent, to modify the property division of the dissolution judgment. Because I disagree with the majority's analysis of that issue, I write to address it.

A circuit court, as a domestic relations court, has only the authority that the statute confers:

> "A divorce court is a court of limited jurisdiction, and it enjoys no power whatever except that expressly conferred upon it by

statute. We have held many times that proceedings in a suit for divorce are purely statutory, and the powers which the court exercises are the mere creation of statute. It is well established in this state that a circuit court, though a court of general jurisdiction, when exercising a special power conferred upon it by statute, and not according to the course of common law, is a court of special and inferior jurisdiction, and is limited in its powers to those enumerated in the statute." *Zipper v. Zipper,* 192 Or 568, 574, 235 P2d 866 (1951). (Citations omitted.)

The long-standing rule that a court cannot modify a property division of a dissolution judgment survives, even though in 1971 the circuit court, as a domestic relations court, acquired full equity powers.[1] As the Supreme Court stated in *Pope and Pope,* 301 Or 42, 45, 718 P2d 735 (1986):

"The legislature has given the courts the power at any time after a decree of dissolution has been granted to set aside, alter or modify any provision for the support of a party. ORS 107.135(1)(a). Notwithstanding the full equity powers granted to a court in dissolution proceedings (ORS 107.405), there are statutory and caselaw restrictions upon the power of the court. As noted, the property divisions of a decree are not subject to modification." (Citations omitted).

The majority opinion concedes that the statute does not authorize a court to modify the property division provisions of a dissolution judgment. No Oregon cases give the court that authority. All of the case law is to the contrary. *See, e.g., Garnett v. Garnett,* 270 Or 102, 526 P2d 549 (1974); *Prime v. Prime,* 172 Or 34, 139 P2d 550 (1943); *Rosseau and Rousseau,* 76 Or App 528, 709 P2d 764 (1985); *Anderson and Anderson,* 65 Or App 16, 670 P2d 170 (1983). The clear rule, apart from the question of consent, continues to be that a court has no authority to modify the property division provisions of a dissolution judgment.

The majority, however, states that because, generally, a consent judgment may be modified with consent, the court may modify the property division provisions of a stipulated dissolution judgment, if the parties consent. Defendant

---

[1] ORS 107.405 provides:

"When a court is sitting in a proceedings for annulment or dissolution of a marriage, or for separation, it shall have full equity powers."

cites no authority for that proposition. Certainly, *Stites v. McGee,* 37 Or 574, 61 P 1129 (1900), on which the majority relies, is not authority. The parties there settled a *water rights dispute* by a written stipulation, and the court entered a decree. When one of the parties later moved to set aside the decree, the court ruled that it could not do so on an *ex parte* motion. It stated that a consent judgment "cannot be amended in any way without the consent of all the parties affected by it." 37 Or at 576. It reasoned that

> "a consent decree is not, in a strict legal sense, a judicial sentence or judgment of the court, but is in the nature of a solemn contract between the parties. When a decree is made by the consent of the parties, the court does not inquire into the merits or equities of the case." 37 Or App at 576.

That reasoning has no application to a dissolution judgment. A dissolution court has the authority and obligation to inquire into equities, even if it is presented with a stipulated judgment. *See* ORS 107.105(f). Moreover, it does *not* follow that, because a consent decree in a water rights dispute may *not* be modified *without* consent, as the court holds in *Stites v. McGee, supra,* a court may modify a property division of a dissolution judgment *with* consent.[2]

The question is whether, in view of all that the courts have said over the years, we should now hold that the court has authority to modify the property division provisions of a dissolution judgment if the parties consent. I think not. ORS 107.135(1)(a) expressly gives courts the power to modify that portion of the dissolution judgment "as may provide for the * * * support and welfare of the * * * children * * * or for the support of a party." The statute provides for court involvement in any subsequent modification of spousal or child support. Had the legislature also wanted to give courts the power to modify property division provisions with consent of the parties, it could have done so. It did not. The statute does not provide for the court's involvement in a property division *after*

---

[2] Spady also argues that the court could modify the property settlement agreement, because the provision was intended as "indirect" child and spousal support. I disagree. The agreement states that Spady had remarried and no longer needs or desires support and that Graves will pay schooling, clothing and transportation costs in lieu of yearly payments required under the decree.

the judgment, regardless of changes of circumstances. *Garnett v. Garnett, supra,* 270 Or at 105.

No compelling purpose would be served if we allow the parties by consent to involve the court in the modification of the property division. A division of property primarily allows the parties to disentangle their financial affairs, although it may also reduce financial inequality. Ordinarily, disentanglement can be accomplished at the time of dissolution. Moreover, without court involvement, Graves was free to mortgage his property to Spady, and she was free to record that mortgage to give notice to third parties. Spady did not need to involve the court to protect her interests and to place it in the position of doing what the legislature has not authorized.[3] Furthermore, a property division should have finality so that third parties can rely on it in dealing with the property and the former spouses.

For the reasons stated, I disagree with the majority's analysis. I should add that the majority does not address Spady's argument that, if the modification court lacked authority to modify the property division provisions, the court should have set aside the entire modification order, including the provision that eliminated Graves' responsibility to pay spousal and child support. The modification court, however, had power to modify the support provisions, even if it lacked authority to modify the provisions governing property division. Spady did not appeal the modification. Accordingly, the court did not err when it denied her second motion for summary judgment.

---

[3] Even if the modification order did describe the real property, I would hold that, because the court lacked statutory authority to modify the property division, DVA and Bank cannot be charged with constructive notice of Spady's mortgage. They cannot be held to know of an act memorialized in the court's register that the court had no authority to do. Although there is no direct authority on the point, there are helpful analogies. In *High v. Davis,* 283 Or 315, 584 P2d 725 (1978), the court held that a subsequent mortgagee could not be charged with constructive notice based on the recordation of a membership agreement where it was *not* properly acknowledged before recordation. The court found that the mortgagee did have notice, however, because a title company report on the property contained an exception relating to the membership agreement that was sufficient to put the mortgagee on "inquiry notice." By contrast, the title company report received by Bank and DVA did not refer to Spady's lien in any form. Furthermore, an unacknowledged deed, although of record, does not give constructive notice to subsequent purchasers or encumbrancers. *See Weber v. Richardson,* 76 Or 286, 147 P 522, 147 P 1199 (1915); *Musgrove v. Bonser,* 5 Or 313 (1874).

Joseph, C. J., and Richardson, J., join in this special concurrence.