Argued and submitted November 1, 1988, affirmed March 7, 1989

SPADY,
*Petitioner on Review,*

*v.*

GRAVES et al,
*Respondents,*

STATE OF OREGON,
by and through its
Department of Veterans' Affairs et al,
*Respondents on Review.*

STATE OF OREGON,
Acting by and through the
Director of Veterans' Affairs,
*Respondent on Review,*

*v.*

GRAVES et al,
*Respondents,*

UNITED STATES NATIONAL BANK OF OREGON,
*Respondent on Review,*

*and*

SPADY,
*Petitioner on Review.*

(TC Nos. 146,028, 85-0620;
CA A39044; SC S35356)

770 P2d 53

Michael Duane Brown, Salem, argued the cause for petitioner on review. With him on the petition was Churchill, Leonard, Brown & Donaldson, Salem.

James N. Westwood, Portland, argued the cause for

respondents on review, State of Oregon Department of Veterans' Affairs and United States National Bank of Oregon. With him on the response was Miller, Nash, Wiener, Hager & Carlsen, Portland.

Before Peterson, Chief Justice, and Linde, Campbell,** Carson, Jones and Gillette, Justices.

CARSON, J.

---

** Campbell, J., retired December 31, 1988.

## CARSON, J.

In these consolidated foreclosure suits, the ultimate issue is the priority of interests in certain real property. To address that issue, we must determine whether a circuit court has the authority to modify a property division from an earlier dissolution decree.

The 23-year marriage of Irene Spady and Donald Graves ended in divorce in 1976. The dissolution decree incorporated a "Property Settlement Agreement" that required Graves to pay child and spousal support and awarded the family residence to Spady. The Property Settlement Agreement also provided that, if Spady remarried and sold the residence, she would place one-half of the net proceeds into a trust fund for the children of Spady and Graves.

In 1977, Spady remarried. She sold the residence to Graves, recording a quitclaim deed in favor of Graves. In 1978, Spady and Graves executed an "AGREEMENT FOR MODIFICATION OF PROPERTY SETTLEMENT AGREEMENT" (Agreement for Modification). The Agreement for Modification stated that Spady had received one-half of the price for the residence and that Graves would pay her the other one-half by September 1, 1982. Spady then would establish the trust fund for the children and place the remaining one-half of the proceeds into the trust fund. The Agreement for Modification also eliminated spousal support, required Graves to pay for the children's schooling, clothing, and transportation, and stated that the Agreement for Modification was to "constitute and be regarded as a second mortgage" on the residence. Spady did not record the Agreement for Modification.

Spady and Graves then asked the dissolution court to modify the dissolution decree to conform to the Agreement for Modification. In May 1978, the dissolution court entered an "ORDER MODIFYING DECREE" providing, in part:

"IT IS HEREBY ORDERED AND DECREED:

"(1)   That the [Agreement for Modification] filed herein is approved and accepted by the Court and the parties are ordered to abide by the terms thereof the same as if set forth fully herein.

"(2) The awards of spousal and child support are hereby modified as set forth in the [Agreement for Modification].

"(3) The Court consents to the modification of time and manner of establishing the trust required in the Decree as is set out in the [Agreement for Modification]."

In October 1980, United States National Bank (Bank) recorded a mortgage on the residence to secure a note given by Graves. The State of Oregon through the Director of Veterans' Affairs (DVA) recorded a second mortgage in February 1981, and Bank recorded a third mortgage on the residence in July 1982.

In 1983, Graves defaulted, setting off this scramble. Spady asserts that she has a "mortgage" on the residence prior to the Bank and DVA mortgages. She argues that Bank and DVA had actual notice of her interest when they recorded their mortgages. She also argues that the order modifying the dissolution decree gave Bank and DVA constructive notice of her interest. Bank and DVA deny that they had notice, actual or constructive, of a prior, superior interest in the real property and assert the priority of their respective mortgages.

The trial court granted summary judgment to Bank and DVA. The Court of Appeals, sitting *in banc,* affirmed. *Spady v. Graves,* 91 Or App 52, 755 P2d 128 (1988). We affirm the decisions of the trial court and the Court of Appeals, but for the reasons set forth below.

■■ This dispute hinges upon two questions: First, did Bank or DVA have *actual notice*[1] of Spady's interest in the residence when they recorded their mortgages? Second, if Bank or DVA did not have actual notice, did either have *constructive notice*[2] through the order modifying the decree? If Bank or DVA did not have actual or constructive notice, their mortgages are prior and superior to Spady's interest in the residence. *See* ORS 93.640(1) and 93.643(1); *High v. Davis,* 283 Or 315, 332-33, 584 P2d 725 (1978); *Landigan v. Mayer,* 32

---

[1] Actual notice is "direct" knowledge of an outstanding interest in the property. *High v. Davis,* 283 Or 315, 333, 584 P2d 725 (1978).

[2] Constructive notice is notice for which a person is held accountable even though the person did not have actual notice. By law, the person is deemed to have had notice in such case.

Or 245, 252, 51 P 649 (1898); *Fleschner v. Sumpter,* 12 Or 161, 168, 6 P 506 (1885).

■ In respect of actual notice, Spady raised this question in response to defendants' motion for summary judgment in the trial court and, again, in her petition for review. She asserts that DVA knew of her interest through activities of a title insurance company and Graves' statements on his loan application (she makes a similar assertion about Bank in respect of the title insurance company). Spady did not, however, assign this question as error to the Court of Appeals. Accordingly, we do not address it. ORAP 7.19(5) and 10.15(2).

■ This leaves the question of constructive notice.[3] This question pivots on the following: First, did the dissolution court have authority to modify the property division of the dissolution decree? Second, if the court did not have authority, should Bank and DVA be charged with knowledge, as Court of Appeals' Judge Newman put it, "of an act memorialized in the court's register that the court had no authority to do[?]" *Spady v. Graves, supra,* 91 Or App at 61 n 3 (Newman, J., specially concurring).

■ The answer to the first question about constructive notice is simple. When sitting as a domestic-relations court, a circuit court has only that authority granted by statute. *Zipper v. Zipper,* 192 Or 568, 574, 235 P2d 866 (1951); *Garner v. Garner,* 182 Or 549, 555, 189 P2d 397 (1948). ORS 107.135(1)(a), upon which Spady relies, authorizes a circuit court to modify spousal and child support provisions, but it does not authorize modification of a property division incorporated in a dissolution decree. Although Spady and Graves, as between themselves, could agree to modify the property division (as they did), the circuit court did not have authority to modify the property division incorporated in the dissolution decree. *See Pope and Pope,* 301 Or 42, 45, 718 P2d 735 (1986); *Garnett v. Garnett,* 270 Or 102, 105, 526 P2d 549 (1974); *Prime v. Prime,* 172 Or 34, 49-50, 139 P2d 550 (1943). Thus, the

---

[3] Constructive notice can be of two species: That resulting from recordation (ORS 93.710)—"record notice"; and that resulting from a duty to inquire (*see Belt et ux. v. Matson et al.,* 120 Or 313, 320-21, 252 P 80 (1927))—"inquiry notice." *High v. Davis, supra.* Only the former specie is at issue in this case.

circuit court, in modifying the property division of the original decree, acted beyond its authority; the parts of the modification order purporting to modify the property division of the original decree are void. *Zipper v. Zipper, supra,* 192 Or at 574.

■    We turn to the second question, as shaped by the answer to the first question: Can the void parts of the modification order act as record notice of Spady's prior interest in the property? The rule is well-settled that a void document, although recorded, cannot give record notice. *See High v. Davis, supra* (subsequent mortgagee did not have record notice where recordation of membership agreement not properly acknowledged before recordation); *Weber v. Richardson,* 76 Or 286, 292, 147 P 522, 147 P 1199 (1915) (an unacknowledged, although recorded, contract does not give record notice to subsequent purchasers); *Musgrove v. Bonser,* 5 Or 313, 317 (1874) (deed not entitled to record, but which has been recorded, does not operate as record notice).

■    The order modifying the dissolution decree thus did not give Bank and DVA constructive notice of Spady's interest in the residence. It did not establish the priority of Spady's interest over the mortgages of Bank and DVA. The mortgages of Bank and DVA are prior and superior to Spady's interest.[4]

The decisions of the trial court and the Court of Appeals are affirmed.

---

[4] Spady also argues that the modification of the support provisions should be set aside. As was noted in the text, however, the dissolution court was authorized to modify those provisions. ORS 107.135(1)(a).