In re Michael A. **GRASSMUECK,**
**Trustee, Plaintiff,**

v.

**FOOD INDUSTRIES CREDIT
UNION, Defendant.**

**Bankruptcy No. 687–08150–H7.
Adv. No. 689–6196–H.**

United States Bankruptcy Court,
D. Oregon.

May 30, 1991.

Mel Kosta, Klamath Falls, Or., for debtor.

Carolyn Wade, Eugene, Or., for plaintiff.

Robert Lowry, Eugene, Or., for defendant.

## MEMORANDUM OPINION

POLLY S. HIGDON, Bankruptcy Judge.

This matter is before the court on cross motions for summary judgment. The trustee has alleged that certain payments made by the debtor to defendant are preferential transfers under 11 U.S.C.

§ 547(b).[1] The defendant asserts that such payments were not preferential and, in the alternative, if otherwise preferential they are protected from avoidance under § 547(c)(1) or (c)(4).

### FACTS

The parties stipulated to the following facts:

1. On or about December 26, 1986 James W. Smith entered into an Extended Cash/Line Agreement and an Extended Cash/Line Agreement–Advance with Food Industries Credit Union (hereafter FICU).

2. Pursuant to those agreements FICU lent James W. Smith $6,160.51 and received a security interest in a 1984 Nissan Stanza VIN JN1HT1156ET120698. At that time James W. Smith was shown as the sole titleholder on the certificate of title. That security interest was duly perfected. At all times material herein up to September 18, 1987 FICU had a perfected security interest in the foregoing vehicle. At all times material herein the Nissan Stanza had a value in excess of the total amount of allegedly preferential payments.

3. On February 25, 1987 James W. Smith filed a petition for dissolution of marriage in Klamath County, Oregon.

4. On March 30, 1987 the state court entered a decree of dissolution which was filed and which incorporated a property settlement agreement. The property settlement agreement granted James W. Smith's wife sole ownership of the 1984 Nissan Stanza; under its terms, as between the parties, James W. Smith agreed to pay the encumbrance thereon to FICU.

5. James W. Smith fully paid for the vehicle by making the following payments to FICU within 90 days of the filing of his bankruptcy petition:

$146.30 on July 6, 1987; $146.30 on July 17, 1987; $4,565.22 on September 18, 1987.

6. James W. Smith filed a Chapter 7 bankruptcy petition on September 28, 1987.

At the time of the filing he was still shown as the sole title holder on the certificate of title to the Nissan Stanza.

7. On November 19, 1987 the state court set aside the March 30, 1987 decree of dissolution and issued an amended decree of dissolution of marriage which modified certain custody and child support provisions of the first decree but made no changes to the prior property division or the husband's responsibility for payment of the debt on the Nissan Stanza.

8. On November 20, 1987 FICU released its lien on the Nissan Stanza.

9. The parties have stipulated that at the time the debtor made all the payments to FICU he was insolvent. They have further stipulated that if the vehicle is not property of the estate the payments enabled FICU to receive more than such creditor would receive if the case were a case under Chapter 7 of this title, the transfer had not been made, and FICU received payment of such debt to the extent provided by the provisions of this title.

### The Estate Had an Interest in the Nissan Stanza on September 28, 1987

■ Regarding the estate's interest in the vehicle FICU argued the debtor's interest in the vehicle, and hence that of his bankruptcy estate, constituted all legal and equitable interests therein and was not subject to the ex-spouse's equitable interest as of the date he filed bankruptcy. This was because the state court set aside the March 30, 1987 divorce decree granting her ownership of the vehicle when it issued the November 19, 1987 divorce decree. Because the first decree was vacated postpetition, it was void *ab initio* and therefore was of no effect at the time the debtor filed bankruptcy. The second decree was entered in violation of the automatic stay and is also void.

The trustee countered that if the second decree is void as a violation of the automatic stay, the first decree is still effective. In response FICU then argued the November

1. All statutory references are to the Bankruptcy Code, 11 U.S.C. 101 *et seq.,* unless otherwise indicated.

19, 1987 order did not violate the automatic stay because the effect of the order was to enhance the debtor's interest in the vehicle from bare legal title to ownership free of any interest of his ex-spouse on the date he filed bankruptcy.

This court believes the estate had an interest in the vehicle as of the date the bankruptcy was filed. The bankruptcy estate is comprised of all legal or equitable interests of the debtor in property as of the commencement of the case. § 541(a)(1). The extent to which the debtor has an interest in property is determined under state law. O.R.S. 107.105(3) provides that upon filing of the dissolution decree the property division ordered shall be deemed effective for all purposes. Therefore as of the date the bankruptcy was filed the March 30, 1987 decree was effective.

 The state court may only modify the support and child custody provisions of a prior dissolution decree and has no authority under O.R.S. 107.135(1) to modify the property division in a dissolution decree. *Spady v. Graves*, 307 Or. 483, 488–89, 770 P.2d 53, 56 (1989); *Matter of Marriage of Pope*, 301 Or. 42, 45, 718 P.2d 735, 737 (1986); *Garnett v. Garnett*, 270 Or. 102, 526 P.2d 549 (1974). Therefore, notwithstanding the language in the November 19, 1987 order "setting aside" the March 30, 1987 order, the property division granting ownership of the vehicle to the debtor's ex-spouse as of March 30, 1987 remained effective as of that date. Alternatively, under federal law what constitutes property of the estate is determined on the date the debtor filed bankruptcy. On that date the March 30, 1987 decree governed the debtor's rights in the vehicle.

This court concludes that at the time the debtor filed bankruptcy on September 28, 1987 he held bare legal title to the vehicle; the debtor's ex-spouse held all equitable interests therein. The legislative history of 11 U.S.C. § 541(d) states that "[t]o the extent such an interest [in property] is limited in the hands of the debtor, it is equally limited in the hands of the estate. . . ." 124 Cong.Rec. H 11,096 (Sept. 28, 1978); 124 Cong.Rec. S 17,413 (Oct. 6, 1978). There-fore the estate had an interest in the vehicle at the time of the bankruptcy filing but that interest was limited to the bare legal title. 11 U.S.C. § 541(d).

*FICU has an Allowed Secured Claim of a Value of $0 Against the Estate; Thus Payments to FICU were Preferential*

 A validly perfected lien generally passes through bankruptcy unaffected. *In re Isom*, 901 F.2d 744, 745–46 (9th Cir. 1990). FICU's lien on the vehicle was also unaffected by the decree of dissolution because a validly perfected consensual lien is unaffected by disposition of the collateral unless authorized by the secured party. O.R.S. 79.3060(2). Normally payments to a secured creditor on the underlying debt cannot be preferential if the value of the collateral is in excess of the amount of the debt. However the validity of this statement is based on the assumption that the value of the creditor's interest in the collateral, for purposes of determining the extent of the creditor's secured claim in the bankruptcy under § 506(a), is equal to 100% of the value of the collateral. This may not always be the case. Under § 506(a) a creditor has an allowed secured claim to the extent of the value of its interest *in the estate's interest* in the collateral. Thus a determination of the value of the estate's interest in property will at times be the critical factor in fixing the amount of the allowed secured claim held by the creditor in the case. If the creditor holds an allowed secured claim which is less than the value of the collateral which secures the debt, the payments to the creditor made within 90 days of bankruptcy may be preferential because that creditor also will hold an unsecured claim and will be partially unsecured for purposes of distribution under Chapter 7.

This court held a valuation hearing on April 17, 1991 to determine the value of the estate's interest in the collateral, that is, the bare legal title to the vehicle. At that hearing the court heard conflicting evidence. FICU's witnesses said the value would be equal to the vehicle's fair market value if accompanied by possession of the vehicle. The trustee's witness said the title

would be worthless without the equitable ownership. The trustee argued the ex-spouse could obtain a substitute Certificate of Title by presenting to the Department of Motor Vehicles both the vehicle and a copy of the divorce decree granting her ownership. The court finds the trustee's argument persuasive. O.R.S. 803.094(2)(a) would require the trustee to release and assign its interest in the vehicle to the ex-spouse upon demand. Consequently the court finds the value of the estate's interest in the vehicle as of the date of filing was $0. The amount of FICU's allowed secured claim in this bankruptcy determined under § 506(a) must also be $0.

The parties have stipulated that if the court determined the vehicle was not estate property all elements of a preferential transfer would be satisfied. That is because under that circumstance the secured creditor would have an allowed secured claim under § 506(a) of $0. This court has found that the estate did have an interest in the vehicle but has placed the value of that interest at $0. This court has found that the secured creditor would have an allowed secured claim under § 506(a) of $0. The legal consequence of this finding is the same as a finding that the vehicle was not property of the estate. The creditor does not have an allowed secured claim in the estate of any value. Given that fact the parties' stipulation that the payments were preferential within § 547(b) is applicable.

*Neither the 11 U.S.C. § 547(c)(1) nor (c)(4) Exception Applies Under the Facts*

■ The court, having found the payments to FICU preferential, must address the § 547(c) defenses.

11 U.S.C. § 547(c)(1) provides:

(c) The trustee may not avoid under this section a transfer

(1) to the extent that such transfer was

(A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and

(B) in fact a substantially contemporaneous exchange;

11 U.S.C. § 547(c)(4) provides:

(c) The trustee may not avoid under this section a transfer

\* \* \*

(4) to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value *to or for the benefit of the debtor*

(A) not secured by an otherwise unavoidable security interest; and

(B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor; (emphasis added)

FICU contends the release of its lien in exchange for the preferential payments was an exchange for new value given to or for the benefit of the debtor within the meaning of either § 547(c)(1) or (4). The court disagrees.

"New value" is defined in 11 U.S.C. § 547(a)(2) as:

(2) "new value" means money or money's worth in goods, services, or new credit, **or release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under any applicable law,** including proceeds of such property, but does not include an obligation substituted for an existing obligation; (emphasis added)

■ Payments by a debtor in exchange for a secured creditor's release of its security interest fall within the exception of § 547(c)(1). *In re E.R. Fegert, Inc.*, 887 F.2d 955, 959 (9th Cir.1989). In *Fegert* the debtor, a general contractor working on a project for the United States, made two preferential payments to its subcontractors. The debtor's surety was obligated to pay the subcontractors if the debtor failed to do so and would have been entitled, under applicable federal law, upon its payment, to an automatically perfected lien against the balance of debtor's contract with the government. The payments were found not to be avoidable preferences because the surety's release of its inchoate

lien when the debtor paid the subcontractors was a contemporaneous exchange for new value under § 547(c)(1). The transfer of the new value in the form of a lien release offset the preferential payments.

This holding may also apply to the provision of § 547(c)(4) as the primary distinction between § 547(c)(1) and (c)(4) is that (c)(1) applies when the release of the lien is substantially contemporaneous with the preferential payment, while (c)(4) applies when the release of the lien is subsequent to the preferential transfer.

The Court of Appeals in *Fegert* and later, in a more extended discussion in *In re Nucorp Energy, Inc.*, 902 F.2d 729 (9th Cir.1990), held that, although the language of § 547(a)(2) suggests that the mere release of a lien, regardless of its actual value to the debtor constitutes "new value" it will not constitute new value under § 547(c)(1) unless actual value from the release flows to the debtor. The purpose of § 547 is to encourage proportionate distribution to creditors. "A court must measure the value given to the creditor and the new value given to the debtor in determining the extent to which the trustee may void a contemporaneous exchange." *Id.* at 733, *quoting In re Jet Florida Systems, Inc.*, 861 F.2d 1555, 1558–59 (11th Cir. 1988). In *Nucorp* the transfer was found preferential because the release of the right to file a lien was found to provide the debtor no new value.

Unlike the circumstances in *Fegert*, and similar to those in *Nucorp* the transfers to FICU diminished the debtor's bankruptcy estate. FICU's lien release provided no benefit to the debtor or to the estate. At the time of filing the debtor held bare legal title to the vehicle. Under Oregon law the trustee, upon demand, would be required to transfer that title to the ex-spouse. Thus the estate would not have the value of the vehicle free and clear of the lien. That benefit flowed to the ex-spouse. The estate was diminished by the payments and received no new value in exchange. Consequently the new value defense under either § 547(c)(1) or (4) is not available to FICU.

An order will be entered denying FICU's motion for summary judgment and granting the plaintiff's motion for summary judgment in the amount of $4,857.82, plus interest from date of demand. This Memorandum Opinion contains the court's findings of fact and conclusions of law and pursuant to Bankruptcy Rule 9014, which incorporates Rule 7052, they will not be separately stated.