Argued and submitted February 17, vacated in part; modified in part; remanded in part; otherwise affirmed June 10, 1998

## In the Matter of the Marriage of

### Andrea DOMINGUEZ,
*Respondent,*

*and*

### Javier DOMINGUEZ,
*Appellant.*

(15-95-03733; CA A96328)

961 P2d 906

George W. Kelly argued the cause and filed the brief for appellant.

Marjorie Schmechel argued the cause for respondent. On the brief was Charles S. Spinner.

Before De Muniz, Presiding Judge, and Haselton and Linder, Judges.

LINDER, J.

## LINDER, J.

Father appeals a modification of a dissolution judgment giving mother judgment against father for the amount of the debt on her van, awarding custody of the parties' two children to mother, granting father visitation 35 percent of the time, and ordering father to pay child support based on his potential income. On *de novo* review, ORS 19.415(3), we modify the judgment.

The marriage was dissolved in November 1995. The parties agreed to joint custody of their two children, ages six and four years at the time. Before the dissolution, the parties had voluntarily worked out a 50-50 visitation schedule. Upon agreeing to joint custody as part of the dissolution, they essentially continued the same evenly divided visitation schedule, one that required the children to make frequent transitions (often several times a week) between the parents' homes. In February 1996, father filed a Motion and Order to Show Cause seeking to have custody awarded to him and to have a visitation schedule set for mother.

At the hearing in October, Carl Peterson, a psychologist who had performed a custody evaluation, initially recommended that joint legal custody continue, with an arbitrator to settle disputes. Peterson altered his recommendation and supported awarding custody to mother when he learned that joint custody was not an option and that father was considering moving to Yelm, Washington. Peterson supported giving custody to mother under those circumstances because he thought that moving the children to Washington would be detrimental to them, and he believed that mother would be least resistant to cooperation between the parties. He seemed to support an evenly divided visitation schedule of one week on and one week off for each parent, eventually moving to two weeks on and two weeks off. Mother testified that if she were given custody, an award of 50 percent visitation to father would be appropriate, although she expressed dissatisfaction with the then current schedule of almost daily transitions.[1]

---

[1] "Q. If this Court awards you custody, and if Mr. Dominguez stays here, what schedule would you like to see?

In a November 15th letter opinion, the trial court awarded custody to mother and asked the parties to work out a mutually acceptable visitation schedule within 14 days. Failing that, each party was to submit a proposal to the trial court. As it happened, the parties did not agree, and each side submitted a letter proposal to the court. At that point, mother proposed a visitation schedule giving father visitation approximately 35 percent of the time. Father proposed a 50 percent visitation schedule. Both parties also addressed the proper amount of child support to award. In that regard, father informed the court for the first time that he had been laid off his job, was then unemployed, and was planning to attend the University of Oregon, beginning in January 1997.

The trial court adopted mother's proposal and asked her attorney to prepare a judgment in accordance with it. That judgment was signed January 15, 1997. Father appeals, raising four assignments of error.

■ In his first assignment of error, father claims that the trial court erred in giving mother a judgment for the amount of the debt on her van without eliminating father's obligation under the original judgment to also pay the creditor for that same debt. Mother implicitly acknowledges that twice obligating father to pay the debt is impermissible, but she urges that there is no double obligation in fact because mother no longer can enforce the original obligation. Mother does not explain how the current judgment eliminates the obligation under the original dissolution judgment. The requirement under that judgment that father "protect, indemnify and hold [mother] harmless" from the $3,700 debt owed to the creditor on mother's van is an aspect of the property division award. As such, it cannot be modified or eliminated. *Spady v. Graves*, 307 Or 483, 488, 770 P2d 53 (1989). By giving mother a judgment against father for $3,042.47, the trial court necessarily twice obligated father for the same debt or modified the earlier property division, either of which is error. *See Murray and Murray*, 88 Or App 143, 744 P2d 1005 (1987) (clarification of judgment ordering husband to

---

"A. I would like him to be as involved as he is now. I think the transition is very chaotic. I would like to try maybe a week on, a week off, or two weeks on, two weeks off. But I would like to see—still see a 50 percent access."

pay balance due on credit card accounts by awarding a money judgment was impermissible modification of property division). We agree with father that the judgment for that amount must be vacated.

Father's second assignment of error challenges the trial court's award of custody to mother. We do not discuss our resolution of that issue, except to observe that on *de novo* review, we find no persuasive reason to disturb the trial court's decision. *See Meier and Meier*, 286 Or 437, 446, 595 P2d 474 (1979) ("[I]n making the determination of the best interests of the child, the trial judge is in a far better position to weigh the various factors which enter into the problem, and his decision should not lightly be disturbed by a court on appeal.").

■ In his third assignment, father claims that the trial court erred in granting him too little visitation. Father argues that the evaluating psychologist, Peterson, recommended a 50 percent visitation schedule for father, as did mother, both in her UTCR 8.010 statement and in her trial testimony. He points out that mother asked for reduced visitation for father only after she learned that she would receive custody of the children. Father argues that mother should be held to her original position, citing *Reich and Reich*, 150 Or App 311, 946 P2d 319 (1997), as a case presenting a similar situation.

In *Reich*, this court increased the father's visitation where the mother had proposed before trial that father receive more visitation than the court awarded, an independent custody evaluator recommended such a schedule, and the mother opposed the greater visitation for the first time on appeal. *Id.* at 315. Mother attempts to distinguish *Reich*, arguing that the father's status as the primary care giver in that case was the deciding factor in our adjustment of the visitation. However, nothing in the opinion reflects that. At most, the father's status in that case may have been one of several factors the court considered. In our view, *Reich* turned on its particular facts and does not dictate a result one way or the other in this case.

Based on our review of the record in this case, we conclude that father should have a 50 percent visitation

schedule. In her trial testimony, mother unequivocally supported that level of visitation because she thought it was in the children's interests for father to remain as involved with them as he had been under the parties' prior agreement. Her only dissatisfaction with the schedule they had followed was with the excessive number of transitions; she therefore supported a schedule that would reduce transitions to and from each parent. The evaluating psychologist essentially made the same recommendation, emphasizing in his testimony the important part father had taken and should continue to take in the day-to-day aspects of the children's lives.[2] On appeal, mother provides no persuasive argument for why father's visitation should be less than the originally agreed to 50 percent. Nor did the trial court, in ordering a schedule of less than 50 percent, explain why reduced visitation was in the children's interests. On this record, we find that a 50 percent visitation schedule is appropriate, so that father can maintain his prior level of involvement in the children's lives. We therefore remand to the trial court to fashion a workable visitation schedule that will provide the least disruption to the children, while giving 50 percent visitation to father.[3]

Under father's fourth assignment of error, he challenges several aspects of the child support award.[4] Father argues that the trial court erred in using $1,800 as mother's monthly income rather than the $1,815 figure specified in the trial court's letter opinion. Mother concedes that father is correct; we accept that concession. The trial court should adjust the support calculation on remand consistent with that income figure.

---

[2] For example, Peterson testified:

"I think that [father] really has dedicated his life at this point to making sure that these kids make it to school, do their homework, all the kind of nuts-and-bolts mechanics of life. * * * So in that capacity, in the current moment, that part sounds wonderful with him, and I would encourage him to continue that."

[3] On appeal, father disputes the court's use of the regular rather than the shared custody formula in setting the amount of child support, based on the parties' disagreement over whether the visitation established by the court gives father a 35 percent schedule, or something slightly less. *See* OAR 137-050-0450. Because we find that father should receive 50 percent visitation, we need not resolve that issue.

[4] We agree with mother that father failed to preserve his argument regarding the amount of child care expense used in the support calculation. We therefore do not consider that contention.

Father also contends that the trial court erred in basing the support amount on his potential rather than actual income. He argues that under ORS 107.135(3)(b),[5] he is entitled to have his support obligation based on his reduced income as long as he acted in good faith in incurring the reduction.

■ ■    ORS 107.135 provides a trial court with ongoing authority, upon motion of either party, to modify a support award based on a change of circumstances; the statute then identifies the standards the moving party must meet for invoking the court's authority. Subsection (3)(b) specifically addresses the burden for an obligor who seeks a modification based on a voluntary reduction in earning capacity. Under the subsection, the obligor may invoke the court's modification authority only if the reduction was incurred in "good faith" and not for the "primary purpose of avoiding the support obligation." If the obligor clears that hurdle—that is, if the obligor demonstrates the voluntary reduction in income was taken in good faith—then the court must recalculate the appropriate level of support. *Glithero and Glithero*, 326 Or 259, 265, 951 P2d 682 (1998). In doing so, the court is to use the guidelines established by the Support Enforcement Division (SED) of the Department of Justice. *Id*. In other words, ORS 107.135(3)(b) governs how an obligor gets back into the courtroom to obtain a modification; it does not govern the amount of the modified award once there. For that, the court applies the same guidelines and exercises the same range of discretion as it does in setting an original support award.

---

[5] ORS 107.135 is not operative until December 31, 2001. Oregon Laws 1997, chapter 746, section 116, operates in its place until then. Subsection (3)(b) of the temporary statute is identical to ORS 107.135(3)(b). Therefore, for convenience, we refer to the codification rather than the session law. ORS 107.135(3)(b) provides:

"If the motion for modification is one made by the obligor to reduce or terminate support, and if the obligee opposes the motion, the court shall not find a change in circumstances sufficient for reconsideration of support provisions, if the motion is based upon a reduction of the obligor's financial status resulting from the obligor's taking voluntary retirement, partial voluntary retirement or any other voluntary reduction of income or self-imposed curtailment of earning capacity, if it is shown that such action of the obligor was not taken in good faith but was for the primary purpose of avoiding the support obligation. In any subsequent motion for modification, the court shall deny the motion if the sole basis of the motion for modification is the termination of voluntarily taken retirement benefits and the obligor previously has been found not to have acted in good faith."

Father's reliance on the statute therefore is misplaced, for two reasons. First, father did not move to modify a preexisting support award based on a "change of circumstances." This matter came before the court on a motion seeking to eliminate the joint custody arrangement, to award custody to father, and to set a visitation schedule for mother. The fact that father was unemployed and intended to pursue further schooling did not even surface until the parties submitted post-hearing letters addressing visitation and child support. ORS 107.135 simply has no application to this case.

■　　Second, father's argument appears to be that the statute bears on the proper amount of support to award. As already described, it does not. The statute sets the burden for invoking the court's authority to modify the amount of a previously granted support award. Once that authority is properly invoked, the support award must be recalculated based on SED guidelines. ORS 107.135(3)(b) is not grounds for an obligor to insist that, if the obligor is unemployed or underemployed in good faith, the amount of support must be based on actual income rather than earning capacity. As we said in *Harper and Harper*, 122 Or App 9, 13, 856 P2d 334, *rev den* 318 Or 246 (1993), *cert den* 511 US 1108 (1994):

> "[I]n calculating a parent's income for determination of child support, the court must base the child support calculation on potential income, if a parent is unemployed or employed less than full time. [OAR 137-050-0360.] Nothing requires the court to find that the parent became underemployed in bad faith."

Father neither cites the relevant administrative rule (OAR 137-050-0360) nor argues that the trial court's support award fails to comply with that rule. Father's argument gives us nothing further to review.[6]

---

[6] Under OAR 137-050-0360, there is a presumption that a parent can be gainfully employed full time, and the parent must overcome that presumption before a support award can be based on something less than full earning capacity. *See Rykert and Rykert*, 146 Or App 537, 934 P2d 519 (1997) (wife attending college full time in pursuit of a degree in physical therapy rebutted presumption); *Cress and Cress*, 119 Or App 197, 200, 850 P2d 383 (1993) (mother, a full-time student raising two children and working in a work study program that limited her earnings to $300 per month, rebutted presumption). Father is obligated to explain how he overcame that presumption. He has made no effort to do that, either on appeal, or below, where he gave the trial court no explanation whatsoever for seeking further schooling rather than full-time employment.

■      Finally, father contends that if his actual income is not used, his income should be calculated using the monthly minimum wage. Although he neither cites nor discusses it, father appears to be invoking OAR 137-050-0360(2), which provides two methods for calculating a parent's potential income.[7] The first is based on the parent's potential and probable earnings level based on recent work history, occupational qualifications, or prevailing job opportunities and earnings levels in the community. The second method is a baseline calculation of full-time work at minimum wage. In this case, father does not address the criteria contained in the rule or otherwise argue that father's potential earnings level is not susceptible of calculation under OAR 137-050-0360(2)(a). Rather, father argues for a lower figure (minimum wage) based only on his assertion that there is no evidence that he reduced his income in bad faith. Under the rule, father's good faith or bad faith is irrelevant to the choice of methods for calculating potential income. Father's argument provides no basis on which to conclude that there is any error.

Judgment for $3,042.47 vacated; visitation modified to provide father with 50 percent visitation; remanded for determination of visitation schedule and amount of child support; otherwise affirmed. Costs to father.

---

[7] The pertinent portion of the rule provides:

"(2) Determination of potential income shall be made according to one of two methods, as appropriate:

"(a) Determine employment potential and probable earnings level based on the parent's recent work history, occupational qualifications, or prevailing job opportunities and earnings levels in the community; or

"(b) Notwithstanding any other provision of this section, the amount of potential income attributed to a parent will not be less than full-time work (40 hours a week) at the current state minimum wage."